City of Wauwatosa, Respondent, vs. Volpano and others, Defendants: Glens Falls Indemnity Company, Appellant.

*March 11—April 7, 1937.*

504

For the appellant there was a brief by *Lamfrom, Tighe, Engelhard & Peck* of Milwaukee, and oral argument by *A. J. Engelhard.*

*Roy R. Stauff,* city attorney, for the respondent.

FRITZ, J.    The following facts were established without dispute: On June 14, 1930, the defendant copartnership, Joe Volpano & Son, as "party of the first part," and the defendant corporation, Glens Falls Indemnity Company, as "sureties and parties of the second part," entered into three separate contracts with the plaintiff, the city of Wauwatosa, for the laying of water mains in that city on Moore, Eleventh,

and Twelfth avenues, respectively. In connection with each contract, the copartnership, as principal, and the defendant corporation, as surety, also executed a separate bond, the condition of which (so far as here material) reads:

"That if the said Joe Volpano & Son . . . shall well and truly perform each and every part of its contract with the city of Wauwatosa, Wisconsin, . . . for furnishing, delivering, and erecting . . . 641' 12" water main and appurtenances, provided for in said contract, and shall pay all claims for all work and labor performed and materials furnished therefor to every person or party entitled thereto for, or in, or about, or under, such contract . . . then this obligation shall be void, otherwise the same shall remain in full force and effect."

In each of the contracts there were provisions, which (so far as here material) read:

That Joe Volpano & Son "agrees to pay in cash to . . . the city of Wauwatosa, within thirty days from the date of the award of this contract, for all water pipe, . . . and all appurtenances necessary and required as specified for the construction of a complete water main, the amount of which is to be included in the total cost of the work as herein provided."

That Joe Volpano & Son and the defendant corporation agree that "in the event the same and every portion thereof is not complete as is herein specified, and according to the schedule of performance as noted in the specifications, and at the time herein specified," the city of Wauwatosa "may take charge of the said work and complete the same, or cause the same to be completed at the charge, cost and expense of" Joe Volpano & Son and the defendant corporation "and for such purpose may thereafter employ any other person or persons as may be selected by said city to carry out and complete said contract, and for that purpose may retain from any money or certificates hereinafter provided to be issued, or paid for said improvement, so much as may be necessary to complete said work as herein provided."

That Joe Volpano & Son agree "to accept in payment for said work, special improvement bonds, to be issued therefor by the" city's officers under the Wisconsin statutes "excepting

so much of said work as shall be a charge against the public, for which city orders upon the city treasury shall be paid and delivered to said party of the first part."

That the defendant corporation acknowledges "full, complete and satisfactory consideration to it . . . paid, before the ensealing and delivery thereof, for each of the covenants and agreements, by it . . . in any and every manner herein made, and for the faithful performance thereof, and" does "hereby agree to and with" the city that Joe Volpano & Son "shall well and duly perform all and singular each and every covenant, condition and agreement herein by said party made."

That Joe Volpano & Son and the defendant corporation "hereby acknowledge themselves . . . jointly and severally, to be firmly bound" to the city "for the faithful and complete performance all and singular by" Joe Volpano & Son "of each and every covenant, condition and agreement herein contained or mentioned in the plans and specifications as to be kept and performed by said party, or by either of said parties of the first and second part."

Between June 14, 1930, and July 11, 1930, the plaintiff furnished materials to Joe Volpano & Son for use in the work to be performed under each contract; and on July 11, 1930, plaintiff's city engineer gave Joe Volpano & Son three statements for the material so furnished. Each statement was addressed to "Joe Volpano & Son," and stated, "you are to pay to the city treasurer the TOTAL AMOUNT of this invoice within thirty (30) days after the award and signing of contract, which will be on or before July 15, 1930." The total amounts on each invoice were:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| $1,499.39 | for | materials | delivered | for | the | Moore Ave. | work |
| 746.04 | " | " | " | " | " | 11th | " " |
| 579.29 | " | " | " | " | " | 12th | " " |

$2,824.72 total for the three invoices

On August 15, 1930, the city engineer, in separate certified reports to the city's board of public works as to each contract, stated that Joe Volpano & Son had completed laying the

mains in accordance with plans and specifications; and that he recommended acceptance thereof. Upon those reports that board accepted the work under each contract; and on August 19, 1930, the city's common council authorized the city officers to issue to Joe Volpano & Son, in payment of the full contract price for laying water mains under each of the three contracts, "special water improvement bonds" for the portion of the cost thereof that was assessed against the abutting property owners, and the city treasurer's checks for the portion of the work to be paid for by the city. On August 25, 1930, Joe Volpano & Son received from the city,—

| $ 781.74 by check | $1,154.76 in Bonds on the Moore Ave. contract |
| 612.09 " | 513.16 " " " 11th " " |
| 516.98 " | 470.40 " " " 12th " " |
| | |
| $1,910.81 " | $2,138.32 |
| | 1,910.81 |

Grand Total $4,049.13

The copartnership signed receipts that the amounts paid under each contract were in full payment for laying the mains.

On January 2, 1931, the city engineer reported to the board of public works that the contractors had failed to pay the city for materials which it had furnished. On February 6, 1931, the city demanded payment by the defendant corporation, as surety, of $3,350.59, owing by Joe Volpano & Son for materials furnished by the city under the three contracts, and a similar subsequent contract between the city and Joe Volpano & Son and the defendant corporation. Subsequently, Joe Volpano & Son assigned assets to the city, which were applied on the amount owing for materials furnished by it under the four contracts, and that left an unpaid balance, upon which the plaintiff recovered judgment against the defendants for $1,367.20, with interest and costs.

The defendant corporation contends that the improvement bonds and the treasurer's checks, totaling $4,049.13, which the city delivered to Joe Volpano & Son on August 25, 1930, in full payment for the work performed under each of the contracts, constituted a fund to which the city had the right to resort in order to obtain payment to itself for all materials furnished under each contract; and that by reason of that delivery by the city of that entire fund to the contractor, without retaining sufficient to pay its claims for those materials, the defendant corporation, as surety for the contractor's performance under the contracts, was released from its obligations under the contracts and bonds in question. On the other hand, the city contends that as the defendant corporation was a paid surety or insurer, and as such was equally obligated with Joe Volpano & Son, under the contract, and the bond, to pay for all materials furnished to the contractor, it was not released by reason of that delivery of the bonds and checks, because the city was entitled to receive cash for its materials, and it was not its duty to resort to the improvement bonds.

When Joe Volpano & Son, on July 15, 1930, failed to pay the amounts then due to the city for the materials which it had delivered, the contractor breached the provision in each contract "to pay in cash to the city of Wauwatosa, within thirty (30) days from the date of the award of this contract, for all" materials required "for the construction of a complete water main." Because of that breach, the city had the right, under the contract, to take charge of the work on July 15, 1930, and complete it at the expense of the contractor and its surety; and also the right to "retain from any money or certificates" to be issued or paid for the improvement described in the contract "so much as may be necessary to complete said work as" therein provided. And, because the city had that right and opportunity to thus obtain full payment of

its claims, it was its duty to the defendant corporation, as surety, to retain as much out of those checks and bonds, which it delivered on August 25, 1930, as was necessary to satisfy its claims. "It is well settled that whenever a creditor has a right and opportunity to apply property of the principal to the satisfaction or security of his debt, he owes to the surety a duty to do so, and release or waiver of that right to the prejudice of the surety and without his consent will discharge the surety, at least *pro tanto.*" *Joint School Dist. v. Bailey-Marsh Co.* 181 Wis. 202, 211, 194 N. W. 171. "The rule is abundantly well settled that a creditor owes a known surety the duty to indulge in no transactions or dealings with the principal debtor which shall vary the surety's position or jeopardize him . . . and that whenever the creditor has a right and opportunity to apply property of the principal to the satisfaction or security of his debt he owes the surety the duty to do so, and release or waiver of that right to the prejudice of the surety and without his consent will discharge the latter, at least *pro tanto.* [Citations.] A mere right or privilege as against the principal becomes a duty to the surety when failure to exercise it may prejudice him." *Pauly Jail B. & M. Co. v. Collins,* 138 Wis. 494, 497, 120 N. W. 225. See also *Price County Bank v. McKenzie,* 91 Wis. 658, 65 N. W. 507; *Plankinton v. Gorman,* 93 Wis. 560, 563, 67 N. W. 1128; *Ringenoldus v. Abresch,* 119 Wis. 410, 416, 96 N. W. 817. In view of those rules and the principle that "a creditor cannot compel the surety of his debtor to indemnify him against the results of his own legally inexcusable act by which he surrenders to the debtor an effective means of collecting the debt, or so changes his position as to give the debtor control of means which should be available to the creditor and to which the surety might succeed by subrogation" (*Weil-McLain Co. v. Maryland Casualty Co.* 217 Wis. 126, 129, 258 N. W. 175), the city is no longer entitled to

payment by the defendant corporation on claims as to which the latter, as a surety, was prejudiced by the city's dealings with the principal debtor in disregard of its duty to the surety as stated above.

As the city was authorized to retain all that was necessary to pay its claims for the materials furnished out of the checks and bonds, which it delivered to Joe Volpano & Son on August 25, 1930, and they exceeded, in the aggregate, the claims on which it is seeking to recover herein, the latter would have been fully satisfied and discharged, but for its neglect or failure to exercise its right, and thus take advantage of its opportunity to obtain payment. Its failure to do so, and thus perform its duty toward the defendant corporation, as surety, clearly resulted in releasing the latter, to the extent that it was prejudiced thereby, from its obligations to the city. As the amount of those checks and bonds was in excess of the city's claims, it would seem, in the absence of proof to the contrary, that the defendant corporation was prejudiced by that delivery to an extent which exceeds the amount which the city seeks to recover herein. It contends, however, that the defendant corporation was not prejudiced by the delivery of those checks and bonds because the contractor was free to use the amounts realized thereon to discharge lienable labor and material claims, which the surety would otherwise have been obligated to pay. That might be true if it had appeared that the proceeds of the checks and of the bonds (which were liquidated at ninety per cent of their face value) were used entirely to pay lienable claims for labor or materials furnished in performance of the contracts with the city of Wauwatosa, and under which the defendant corporation was liable for such claims. There is no evidence to that effect. It does appear that all claims for labor and materials required in performing those contracts were paid, with the exception of the city's claim; but it does not appear

that the proceeds of the checks and bonds delivered by the city for performance of the contracts in question, as to which the defendant had become a surety, were used solely to pay lienable claims arising under those contracts with the city. On the contrary, there is evidence that in 1930 Joe Volpano & Son performed similar work under contracts with the city of Waukesha, and that they completed one job to pay the last one, and used the money received in payment for work under one contract to pay their men on the next. Under those circumstances, and the fact that the defendant copartnership and its members were insolvent, the city's delivery of the checks and bonds in question, without retaining sufficient to satisfy its claims for its materials, was prejudicial to the defendant corporation.

*By the Court.*—Judgment reversed as to the Glens Falls Indemnity Company, with directions to enter judgment dismissing the complaint against that defendant.