GLENS FALLS INSURANCE COMPANY *v.* BALTIMORE COUNTY, MARYLAND, Etc., ET AL.

[No. 136, September Term, 1962.]

*Decided February 5, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*Richard C. Murray,* with whom were *Smith & Harrison* on the brief, for the appellant.

*Nolan P. Chipman* and *A. Frederick Taylor,* with whom were *Paul Martin* and *Martin & Taylor* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment for $52,129.94, with interest, rendered by the court without a jury in an action brought by the Dyer partnership (herein referred to as Dyer) against Mays Construction Company (herein referred to as Mays), as principal and the appellant as surety. The theory of the action was that Mays had a contract for road work with Baltimore County, known as the Liberty Manor contract, and another contract known as Belle Farms contract; that Glens Falls entered into contractor's performance and labor and material bonds, as surety, covering each contract; that Dyer furnished stone and other materials to Mays on both jobs and billed him for $52,129.94, which Mays failed to pay.

The case was tried on its merits under general issue pleas, but Glens Falls moved for judgment at the conclusion of the plaintiff's case on the ground that suit could only be brought on the bonds in the name of Baltimore County, Maryland. Dyer

was granted leave to amend by interlineation and did so. Glens Falls moved to dismiss, on the ground that this brought in a new party plaintiff, but the court overruled the motion. The correctness of that ruling is the first point presented. If the amendment set up a new cause of action the appellant could interpose the defense of limitations, which it sought to do. Cf. *Cline v. Fountain, Etc. Company,* 214 Md. 251; Rule 203.

We find no error. The amendment was one of form and not of substance, permissible under Rule 320. It merely brought in the county as a nominal party, for the use and benefit of Dyer, and did not change the real parties in interest. Cf. *Le-Strange v. State, Use of Roche,* 58 Md. 26, 39 and *State v. Gaver,* 115 Md. 250, 256. See also *B. & O. R. R. v. State, Use of Allison,* 62 Md. 479, 481 and *Mayor & C. C. of Balto. v. Yost,* 121 Md. 366, 375. Under the labor and material bonds furnished to the county it was expressly provided that every claimant i. e. those contracting with the principal, Mays, or a sub-contractor of Mays, furnishing material or labor for which he was unpaid, might sue "on this bond, in the name of the county, for the use and benefit of such claimant * * *." For a discussion of the Maryland practice in regard to use plaintiffs see *Accident Co. v. Net & Twine Co.,* 150 Md. 40, 43.

The bonds in the instant case were required by Code (1962 Suppl.) Art. 90, Sec. 11, incorporating Chapter 10, Acts of 1959, and undertook to provide the statutory coverage. It may be noted that although the statute confers the right to sue on each claimant, it does not provide that suit must be in the name of the State or political subdivision. It expressly provides that the obligee named in the bond shall not be liable for the payment of any costs or expenses of any such suit. It has been held under a similar statute that suit need not be brought in the name of the political subdivision, the nominal party, but may be brought in the name of a claimant, in his own right and not as a class suit. *Aetna Cas. & Surety Co. v. Henslee,* 260 S. W. 414 (Ark.). See also the cases collected in a note, 77 A.L.R. 21 and 206. Whether the statute had the effect of changing the existing practice is a question we need not decide. We think the addition of the obligee, as a nominal party, was not such a change of parties as to constitute a new suit. Nor

did it change the cause of action. Cf. *Smith v. Potomac Edison Co.,* 165 F. Supp. 681, discussing the Maryland authorities, and *Cline v. Fountain, Etc., Company, supra.*

The appellant's chief contention on the merits is that the conduct of Dyer in releasing over $54,000 to Mays prior to suit and in releasing over $94,000, to Mays subsequent to the institution of suit, as well as certain other payments by way of settlement, discharged the surety. The factual background is rather complicated. Dyer agreed to supply to Mays the materials used to perform the two contracts with the county in which Mays was the general contractor involved in the instant case. It is conceded that Dyer supplied materials on both jobs, and that, despite repeated demands, at the conclusion of the work $52,129.94 remained unpaid. Notice of default was given to and demand for payment was made upon the surety, and suit was filed on April 28, 1961. Mays had four other road contracts with the county, three of which were bonded by Glens Falls and one by the Maryland Casualty Company. Dyer furnished materials on these contracts also. These contracts were all completed prior to the contracts in suit. Mays paid Dyer in full for the materials supplied on them, and paid for certain other materials supplied for some private entrance jobs.

In May and June of 1960, at a time when Mays owed Dyer roughly $40,000 on the contracts in question, a new series of transactions began. Dyer bid on and was awarded some seventeen contracts for road construction for the county. He employed Mays as a subcontractor or superintendent. The trial court found as a fact that these contracts were "separate, distinct and independent" of the contracts sued upon. Dyer was bonded upon each of them, and obligated to pay the subcontractor. In June 1960, Mays was having financial difficulties and Dyer loaned him $15,000, evidenced by a demand note and chattel mortgage. After suit was filed Dyer and Mays entered into an agreement adjusting various claims and cross-claims on other contracts including one with the State Roads Commission, and as a result of the settlement, Dyer paid Mays $13,000. There was testimony that Glens Falls was fully aware of all these transactions.

We see no sinister significance in the fact that payments re-

ceived by Dyer from Mays were applied to the four other contracts on which Mays was the general contractor and Dyer the supplier. The testimony is undisputed that these contracts were completed before the contracts in suit were completed, and in the absence of any direction it would seem natural, and in accordance with the usual business practice as the Chancellor found, that the payments should be so applied. Since Glens Falls was the surety on three of these contracts, it can hardly complain of that application as to them. Dyer was under no duty to forego a loan to Mays, or to specify the purposes to which the proceeds should be devoted, as regards Mays' outstanding obligations. Apparently, most of it was used to meet payrolls or other pressing needs.

In regard to the contracts on which Dyer was the general contractor and Mays the subcontractor, payments made by Dyer to Mays were only those required by the terms of those contracts and the bonds securing them. The appellant seems to contend that although these were wholly separate contracts, Dyer owed a duty, to the surety on the two contracts here involved, to withhold payments to Mays, or to require the application of those payments to Mays' indebtedness on the contracts it had secured.

It is generally true that a creditor cannot release funds of the principal, properly applicable to the debt secured, without releasing the surety. But as stated in Stearns on *Suretyship* (5th ed.) Sec. 6.51: "A surety cannot claim his discharge in every instance where the creditor voluntarily relinquishes property of the principal which he holds. His right to discharge requires that the property be so placed that the creditor is bound to hold it in special trust to pay the particular debt for which the surety is liable. It is not enough that the creditor have in his possession the means of satisfying the debt but he must have the right, conferred upon him either by law or by contract with the owner, to so apply the property.

"If the creditor holds funds of the principal arising out of some other transaction, he need not apply these funds to the debt for which the surety is liable, but may pay the principal and proceed against the surety. The creditor's right of set-off against the principal is one that he may use or not, as he chooses."

Restatement, *Security,* Sec. 143 states the rule: "Where the creditor is indebted to a principal whose duty to the creditor is secured by the obligation of a surety, payment by the creditor of his indebtedness to the principal before or after maturity of the principal's duty does not discharge the surety." The comments indicate that this rule is derived from the bank cases. Many such cases are collected in a note in 70 A.L.R. 339, but there appears to be a split of authority. In *McShane v. Howard Bank,* 73 Md. 135, 157, Judge McSherry, for this Court, discussed the situation where a bank holds a promissory note on which there is a surety, and also funds on general deposit. He said: "The right of the bank to apply the credits of the customer to the satisfaction of such a note is rather in the nature of a set-off or of an application of payments, neither of which, in the absence of express agreement or appropriation, will be required by the law to be so made as to benefit the surety." The holding in the case was that the surety on a fidelity bond covering the cashier was not released by the payment of salary to the cashier after knowledge of his defalcations, although the bank might have exercised a right of set off. To the same effect, see *Museum of Fine Arts v. American Bonding Co.,* 97 N. E. 633 (Mass.) and *Glens Falls Indemnity Co. v. Basich Bros. Constr. Co.,* 165 F. 2d 649 (C.A. 9th). Cf. *Bounds v. Nuttle,* 181 Md. 400, 408, and *Dickerson Lumber Co. v. Herson,* 230 Md. 487.

We see nothing inequitable in the conduct of Dyer in advancing money to Mays or in employing him and paying him for services rendered as subcontractor, all of which was made known to the surety, and in which it apparently acquiesced. Indeed, these actions afforded Mays an opportunity to recoup losses and to pay his debts for the benefit of all creditors. We see no prejudice to Glens Falls through Dyer's conduct, in the sense of a destruction of subrogation rights, as in *Noma Electric Corp. v. Fidelity & Dep. Co.,* 201 Md. 407. Nor is this a case of misapplication of funds dedicated to a particular purpose as in *U. S. v. Johnson, Smathers & Rollins,* 67 F. 2d 121, 123 (C.C.A. 4th). In the absence of a duty on the part of the creditor to apply unallocated funds so as to exonerate a particular surety, we see no reason to hold the surety

in the instant case released. For a discussion of the principles involved, see *State Bank of Wheatland v. Turpen,* 34 P. 2d 1 (Wyo.) and 10 Appleman, *Insurance,* § 5996. Nor do we think that Dyer was bound to insist, as a condition to the settlement of other matters with Mays, that Mays apply the balance paid to him to the liquidation of Mays' debt on the contracts in suit. Such insistence might well have prevented consummation of the settlement, without any advantage to Glens Falls. Here again there was apparent acquiescence on the part of the surety.

The appellant contends that it is released upon the further ground that Dyer agreed to extend the time for payment by Mays. The short answer is that Mays made such a proposal but the uncontradicted evidence is that Dyer did not accept it. Hence there was no binding agreement and no release. It is clear that mere forebearance to sue, or lack of diligence, will not suffice. See *Berman v. Elm Loan Asso.,* 114 Md. 191, 195, and cases cited.

Finally, the appellant argues for a release *pro tanto* on the ground that the county admitted, in response to an interrogatory, that it paid $13,979.67 to Mays, on the Belle Farm contract, after it had notice of Mays' default and demand for payment by Dyer. As a matter of fact, the county was originally joined as a party defendant, and it was argued that it might be liable for an improper payment to Mays, but the county was let out on motion to dismiss, and there was no appeal taken from that action by any of the other parties. If we assume, without deciding, that the surety was prejudiced by the county's action, and might have been released *pro tanto* in a direct suit by the county, cf. *City of Wauwatosa v. Volpano,* 272 N. W. 459 (Wis.), it does not follow that the supplier, Dyer, would be barred from recovery of that sum from the surety. No doubt Dyer would have been glad to receive that sum from the county, and reduce its claim *pro tanto*. It is not contended that Dyer controlled, or could control, the county's action. He denied any knowledge of what payments Mays was receiving from the county, and any effort to direct the allocation of any of the progress payments.

Since we conclude that the appellant established no valid

defense on the merits we need not pass on the appellee's contention that the court erred in admitting evidence to support a claim of set-off, in the absence of a special plea under Rule 314.

*Judgment affirmed, with costs.*