## ARMSTRONG ENTERPRISES, INC. *v.* THE CITIZENS BUILDING AND LOAN ASSOCIATION OF MONTGOMERY COUNTY, INC.

[No. 522, September Term, 1965.]

*Decided December 6, 1966.*

546

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*Ralph F. Berlow* for appellant.

*Charles W. Prettyman* for appellee.

BARNES, J., delivered the opinion of the Court.

On March 27, 1963, the Great Eastern Distributing Company, Incorporated (Great Eastern), a District of Columbia corporation, executed a purchase money mortgage to the appellee, The Citizens Building and Loan Association of Montgomery County, Inc. (Citizens), in the amount of $70,000 upon certain land in Montgomery County known at lots nos. 6 and 7 of Triangle Park, with an exception of 2000 square feet, more or less, conveyed to the State Roads Commission. "William F. Prettyman or Charles W. Prettyman" were named as attorneys in the mortgage to make a sale of the mortgaged premises in the event of default. Great Eastern, the mortgagor, conveyed the equity of redemption in ,the mortgaged premises to Armstrong Enterprises, Inc., a corporation, by a deed dated August 10, 1963, and duly recorded among the Land Records of Montgomery County on October 25, 1963. This deed was marked on its face "no title examination" and bears no tax stamps, suggesting a transfer without consideration.

Default having occurred, the mortgaged property was duly advertised for sale and originally was sold to R & D Co. for $106,500. This sale was ratified by the Circuit Court for Montgomery County, in equity, but after the purchaser defaulted, the mortgaged property was duly readvertised and resold at the risk of the original purchaser on December 29, 1964, to Hill and Sanders, Inc. for $103,500. This sale was properly re-

ported to the Circuit Court on January 4, 1965, and was ratified *nisi* on that date.

Leonard S. Blondes had filed a claim on November 9, 1964 (after the final ratification of the first sale), against any surplus due the mortgagor upon a judgment for $21,035.87 obtained against Great Eastern on August 4, 1964, in the Circuit Court for Montgomery County, which with interest to November 9, 1964, amounted to $21,375.93 with interest accruing at $3.47 a day. The claimant refiled his claim on January 25, 1965, upon the same judgment with accrued interest, together with an alternative claim of $16,000 against the surplus proceeds based upon an assignment from Great Eastern, Armstrong Enterprises and Wolfe Filderman, individually. The assignment describes Mr. Filderman as the president and duly authorized agent of Great Eastern and of Armstrong Enterprises and recites that he executed the assignment on behalf of those corporations as president.

The court auditor filed his report and account on March 23, 1965, showing a surplus of proceeds of sale of $25,073.95. His report recited the transfer of the equity of redemption from Great Eastern to Armstrong Enterprises on August 10, 1963, and found the transfer was prima facie correct and that Mr. Blondes, as a judgment creditor whose judgment was obtained against Great Eastern on August 4, 1964, or some ten months after the transfer, had no lien on the mortgaged property and his claim on the judgment could not be allowed. The auditor, however, found that the assignment from Armstrong Enterprises to Mr. Blondes in the amount of $16,000 from the surplus of proceeds was a valid assignment by the record owner of the equity of redemption, noting that Mr. Filderman was president of both Great Eastern and Armstrong Enterprises and that these two corporations and Mr. Filderman were the three parties to the assignment filed on January 25, 1965. This claim of $16,000 was allowed by the auditor to Mr. Blondes, and the auditor's report recited that the balance of the surplus proceeds, $9,073.95, "should be paid over to Armstrong Enterprises, Inc., the holder of the equity of redemption."

Armstrong Enterprises filed exceptions on April 7, 1965, to the auditor's report alleging an erroneous allowance of the

$16,000 claim of Mr. Blondes based upon the assignment because the assignment was allegedly "executed without authority from the corporation, without consideration and in fraud of the rights of the corporation."

The Chancellor on April 13, 1965, signed an order finally ratifying the auditor's report except as to the surplus proceeds of $25,073.95. The order provided that there be further proceedings to determine and conclude the distribution of the surplus proceeds.

On April 22, 1965, Mr. Blondes filed a motion to set aside the deed of August 10, 1963, from Great Eastern to Armstrong Enterprises alleging that at the time of the execution of the deed, Mr. Blondes was an active creditor of Great Eastern who later on August 4, 1964, recovered a judgment on that indebtedness against Great Eastern, and that the conveyance of the equity of redemption was a fraud and sham, the only purpose of which was to prevent Mr. Blondes from collecting his indebtedness and further alleging that the deed was executed for the sole purpose of defrauding creditors. Also on April 22, 1965, Mr. Blondes filed exceptions to the auditor's report based on the auditor's refusal to allow his claim for $21,035.87 based on his judgment, with accrued interest.

On April 23, 1965, Mr. Blondes and Armstrong Enterprises dismissed their exceptions to the auditor's report and Mr. Blondes also dismissed his motion to set aside the deed of August 10, 1963. The auditor's report was finally ratified and confirmed by the Chancellor on April 26, 1965.

On May 4, 1965, the attorney who had sold the mortgaged property sent a check payable to "Armstrong Enterprises, Inc." in the amount of $9,073.95 to that corporation at 11201 Viers Mill Road, Wheaton, Maryland, but the envelope was returned by the post office marked "Moved, left no address." Thereafter the attorney mailed the check to "Armstrong Enterprises, Inc." at 3407 East-West Highway, Chevy Chase, Maryland, in accordance with the address furnished in a letter dated December 30, 1964, from Wolfe Filderman, as vice president of Armstrong Enterprises. This check was not returned. It was paid by the drawer's bank, endorsed "Armstrong Enterprises, Inc. Wolfe Filderman, V.P."

On September 3, 1965, Armstrong Enterprises, through new counsel, filed a motion for summary judgment against Citizens, the mortgagee, alleging that Citizens had failed to pay Armstrong Enterprises the $9,073.95 allowed it by the auditor's report, that there was no dispute as to any material fact and that Armstrong Enterprises was entitled to judgment as a matter of law. The motion for summary judgment was supported by the affidavit of Thomas H. Armstrong who stated that he had been president of Armstrong Enterprises since its "foundation"; that the amount allowed that corporation in the auditor's report had not been paid to it by Citizens; that he had been advised by Citizens that the attorney who made the sale delivered a check for the amount allowed to Wolfe Filderman; that prior to such delivery the attorney had been "repeatedly advised, both orally and by pleadings in this cause, that the said Wolfe Filderman had no authority to act for Armstrong Enterprises and had no authority to receive this check."

Charles W. Prettyman, the attorney who made the sale, filed a counter affidavit to the motion reciting the sending of the check above mentioned and the facts already stated in regard to the mailing of the check to Armstrong Enterprises. Photocopies of the check and its endorsement and of the letter of December 30, 1964, were attached, and it was stated that the auditor's report had found that Filderman had executed the assignment filed on January 25, 1965, on behalf of Armstrong Enterprises and had allowed the claim of Mr. Blondes based upon that assignment. Mr. Prettyman also swore that at no time was he advised by anyone that Mr. Filderman had no authority to act on behalf of Armstrong Enterprises.

The motion for summary judgment came before the Chancellor who after hearing argument and considering the affidavits and exhibits, concluded that the motion should be denied to Armstrong Enterprises, but should be entered in favor of Citizens pursuant to Maryland Rule 610d 1, even though Citizens had not filed a motion for summary judgment. An order to this effect was duly signed on December 6, 1965, and filed on December 9, 1965, in the suit. An order for appeal to this Court from the order of December 6, 1965, was filed on January 4, 1966.

## (1)

We think it clear that the motion for summary judgment was improvidently filed by Armstrong Enterprises, but we will treat it as the equivalent of a petition for an order directing Citizens to complete payment of the surplus proceeds in accordance with the auditor's report; we treat the affidavits and exhibits filed in opposition to the motion as an answer to that petition; and the proceeding, as a hearing upon that petition, answer and exhibits. The proper procedure has long been established in the Chancery practice and by our prior cases. It is summarized in Miller, *Equity Procedure*, § 554, pages 652-53 as follows:

> "When an audit is finally confirmed the approved practice is to accompany the order [of final ratification] with an order to pay the amounts allowed to the parties in interest; but the judgment of the court is as effectually pronounced without this order. After such an adjudication an order directing payment would at any time be passed as a matter of course. The order of final ratification is to be respected and obeyed without question by the party directed to disburse the fund. In the case of failure to do so, the remedy may be by petition by the injured party asking that payment be compelled; it is not necessary to file an original bill."

See *Owings v. Rhodes,* 65 Md. 408, 415 (1886); *Thruston v. Devecmon,* 30 Md. 210, 216 (1869); *Marbury v. Stonestreet,* 1 Md. 147, 156 (1851); *Frieze v. Glenn,* 2 Md. Ch. 361, 365 (1848).

Citizens, the appellee, filed a motion to dismiss the appeal on the ground that the final order in the suit was the order of ratification filed on April 26, 1965, and no appeal having been taken until January 4, 1966, the appeal was prosecuted substantially after the thirty-day period required by Maryland Rule 812 a and must be dismissed. We do not agree. Although the ratification of the auditor's report in April, 1965, was a final order, appealable on the question of Citizens' *liability* to pay, the denial of Armstrong's motion for summary judgment, which we treat as a petition for an order to pay the amount allowed,

was a final order on the issue of whether the allowed amount, in fact, had been paid. An appeal lies from such a final order.

(2)

On the merits of the appeal, it is clear to us that the attorney who made the sale acted properly in sending the check for the $9,073.95 balance due to Armstrong Enterprises, Inc. He was not required to wait for an order specifically directing him to make the payment in accordance with the auditor's report. Although Armstrong Enterprises had alleged in its exceptions filed on April 7, 1965, to the auditor's report that the assignment had been executed (by Wolfe Filderman) without authority from the corporation, without consideration and in fraud of its rights, these exceptions were withdrawn by Armstrong Enterprises and the auditor allowed the claim of Mr. Blondes for $16,000 based upon that assignment. This action of the auditor was finally ratified and confirmed by the Chancellor on April 26, 1965. In short, the authority of Mr. Filderman to execute the assignment and bind Armstrong Enterprises had been adjudicated before the check for $9,073.95 payable to Armstrong Enterprises, Inc. was mailed to the corporation at the address given by Mr. Filderman in his letter of December 30, 1964. Mr. Prettyman is not chargeable with any knowledge of the inter-corporate arrangements of Armstrong Enterprises and if Mr. Filderman was not authorized to endorse the check of May 4, 1965, to Armstrong Enterprises, this presents a matter not involved in the case at bar. The order of December 9, 1965, in favor of Citizens must be affirmed but this affirmance will be without prejudice to Armstrong Enterprises to pursue any remedies it may have against any other persons, firms or corporations, not parties to this appeal.

> *Motion to dismiss denied: order of December 9, 1965 affirmed without prejudice as set forth in this opinion, the costs to be paid by the appellant.*