HARDISTY *v.* KAY ET AL.

[No. 173, September Term, 1972.]

*Decided February 9, 1973.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*S. Churchill Elmore,* with whom were *Lambert, Furlow, Elmore & Heidenberger* on the brief, for appellant.

*Hillel Abrams* for appellees.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Montgomery County, sitting in equity, which has awarded appellees, Jack Kay and Harold Greenberg, a judgment against appellant, John T. Hardisty, for $19,-860.13. This amount represents the balance owed on the purchase price bid at a tax sale of a 9.154 acre parcel of land in Montgomery County which amazingly, and for some unexplained reason, neither party to this suit seems to want. It is from that adverse judgment that Hardisty has appealed.

The facts of this case are not disputed but the application of the law to these facts is and presents a question of first impression to this Court. This entire dispute revolves around the proper interpretation of various sections of Maryland Code (1957, 1969 Repl. Vol., 1972 Cum. Supp.), Art. 81, §§ 70-123, governing tax sales. Some time prior to June 10, 1968, D. A. Dayhoff, Collector of Taxes in Montgomery County, properly instituted procedures to sell a number of parcels of land in Montgomery County in order to obtain payment of unpaid State and County taxes. One of these parcels, the subject of this dispute, was owned by appellees and was described in the tax sale advertisement as:

"Parcel of land called 'Northwest', containing 9.154 acres of land, located in the Thirteenth Election District-Wheaton Outside, Montgomery County, Maryland."

Pursuant to Art. 81, § 75, the last owners of these parcels as appearing on the collector's tax rolls were warned that unless the taxes due were paid before June 10, 1968, the collector would proceed to sell the property to satisfy the indebtedness. The taxes on the "Northwest" parcel were not paid and, as warned, the property was sold at a public auction. The highest bidder on that parcel was Walter R. Hardisty. Upon being issued a certificate of

sale, he assigned all his rights, title and interest in the certificate to appellant as permitted by Art. 81, § 84. The successful bid of Hardisty on the "Northwest" parcel was $21,000 and included the $1,139.87 that was owed the collector. This latter amount, which included the taxes, interest, and penalties due as well as the expenses incurred in making the sale, was immediately paid to the collector as required by Art. 81, §§ 80, 81.

Article 81, § 92 provides that "the owner or other person having an estate or interest in the property sold by the collector may redeem the said property at any time until the right of redemption has been finally foreclosed." Before foreclosure proceedings are instituted, redemption is accomplished by paying the collector the whole amount of money received from the sale, together with interest at the rate of 6% per annum from the date of sale. Art. 81, § 93. If this right of redemption is not exercised within one year of the sale date, the holder of the certificate of sale, his heirs, or assigns, may file a bill in equity to foreclose all rights of redemption of the property to which the certificate relates. Art. 81, § 101. But, even after this one year period, the same right continues until finally barred by the decree of foreclosure. The bill must be filed within two years of the date of sale or it is void and all rights of the certificate holder cease; the monies paid are forfeited and are applied to pay the arrears of taxes on the property. Upon the filing of a bill to foreclose the right of redemption, subpoenas are issued commanding all named resident defendants to appear in court on a certain day (at least 60 days from the date of filing the bill) to answer or to redeem the property and warning them that upon failure to do so a final decree will be entered foreclosing such rights. Art. 81, § 106. Additionally, an order of publication is required so as to similarly warn all other persons, known or unknown, who have an interest in the property. Art. 81, § 107. Once an action to foreclose is instituted, a party redeeming the property must apply to the court to have the amount necessary for redemption fixed. Art. 81, § 94.

Here, the owners did not attempt to redeem the property which is the subject of this dispute either before or after the institution of an action for foreclosure by Hardisty. Rather, the appellees filed an answer to that action which affirmatively stated that they had no interest in redeeming the "Northwest" parcel. Thereafter, at the instance of appellant, a final decree was entered declaring that the rights of the defendants to redeem were forever foreclosed and vesting an absolute and indefeasible title to the "Northwest" parcel in fee simple in Hardisty. All that remained for him to do to obtain execution of the deed to this property from the collector of taxes was to pay the balance of the purchase price together with all taxes, interest, and penalties that had accrued since the date of sale.

Up until this point, no party to this suit disputes that all requirements of the Code were adhered to and everything had proceeded smoothly. But after having obtained the decree which foreclosed all rights of redemption and "vested in [him] an absolute and indefeasible title in fee simple in the property," (Art. 81, § 112) Hardisty balked at paying the balance owed. When more than eight months passed without appellant paying the balance required, appellees filed a petition in the foreclosure case to compel payment. The appellant answered this petition by averring that he was not required to pay the balance as this was merely a condition precedent to the issuance of the deed by the collector and that he "has no wish to acquire said property and does not intend to obtain a deed thereto . . . and has elected to forfeit the amount of $1,139.87 paid on account of the purchase price."

In his memorandum of points and authorities submitted to the court to aid it in considering the petition to compel payment, Hardisty stated that:

"in an effort to assure [appellees] that he has in fact elected to forfeit the not inconsiderable sum of $1,139.87 which he paid the Collector of

Taxes in consideration for the issuance of the Certificate of Tax Sale, and in an effort to remedy the divestation of [appellees'] title of which they complain by their petition herein, does hereby offer unto [appellees] his undertaking to prosecute his motion to amend the Final Decree of this Honorable Court by seeking to have deleted that portion of such Decree which provides for the divestation of [appellees'] title to such 9.154 acres of land. [Appellant] has had prepared and does herewith offer to file his motion for such relief."

Hardisty followed through on this offer and did, in fact, file a petition to amend the decree of court which had foreclosed the right of redemption and divested appellees of their title. By this petition he sought to strike that portion of the decree which had these effects. However, the trial court concluded that it was barred by Art. 81, § 113 from even entertaining the petition to amend its final decree and, therefore, denied the request. And, after a hearing, the chancellor concluded that the appellees were entitled to the balance of the purchase price bid and, accordingly, he rendered a money judgment in their favor. It is from this judgment that Hardisty has appealed.

Here, appellant has fashioned three arguments designed to bring about a reversal. Hardisty posits that the chancellor erred: (i) when he held that he was prohibited by Art. 81, § 113 from reopening the final decree of the court; (ii) when he entered the judgment against appellant in the amount of the unpaid portion of the bid; for, it is contended that the chancellor lacked the authority to so act; and (iii) by so doing, the court has exposed appellant to the possibility of double payment—*i.e.* the necessity of paying this judgment to appellees as well as having to pay the balance owed to the collector of taxes in order to obtain his deed.

(i)

Appellant's first contention is that the chancellor erred when he concluded that Art. 81, § 113 prohibited him from even entertaining the motion to amend the decree which foreclosed appellees' right of redemption and vested title in Hardisty. That section in pertinent part reads:

> "§ 113. Decree conclusive.
> No application shall thereafter be entertained to reopen any final decree rendered under the provisions of this subtitle except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose . . . ."

The purpose for this provision and the others of this Article is "to encourage the foreclosure of rights of redemption by suits in equity courts and for the decreeing of marketable titles to property sold by the collector." Art. 81, § 97. "In other words, the legislature has declared that the public interest in marketable titles to property purchased at tax sales outweighs considerations of individual hardship in every case, except upon a showing of lack of jurisdiction or fraud in the conduct of the foreclosure." *Thomas v. Kolker,* 195 Md. 470, 475, 73 A. 2d 886 (1950). *See also Kaylor v. Wilson,* 260 Md. 707, 712, 273 A. 2d 185 (1971). Here, there is no allegation or suggestion of lack of jurisdiction or fraud.

We think the legislature has been explicit in its language and clearly expressed its intention that a final decree is conclusive and *no* application shall thereafter be entertained unless it falls within the exempted categories. Appellant argues, however, that we must read this section in conjunction with § 112 and when this is done, he contends, it is apparent that such finality only attaches to the decree as it affects the rights of a defendant and not those of a plaintiff-purchaser. We do not think that a proper interpretation of these sections man-

dates such a result. Hardisty directs our attention to the following portion of § 112 to support his argument:

"At the expiration of the time limited in the order of publication, and in the subpoena, the court shall pass its decree in the proceedings, in accordance with the general equity jurisdiction and practice of the said court. *The decree shall be final and conclusive upon the defendants,* their heirs, devisees and personal representatives and they or any of their heirs, devisees, executors, administrators, assigns or successors in right, title or interest, and *all defendants shall be bound by the said decree . . . .*" (emphasis added).

This section does make a decree against a defendant final and conclusive which in turn encourages prospective purchasers to bid at tax sales as they know they can acquire a marketable title. But, this section also provides for a decree to be entered in favor of a plaintiff which "shall vest in [him] an absolute and indefeasible title in fee simple . . . ." Therefore, § 113 makes the decree final in all respects and binding on the plaintiff as well as the defendant. Surely the legislature did not intend to make a decree final and conclusive against a defendant and, at the same time, make it less than final and conclusive against the purchaser who requested that decree. The interpretation argued for by appellant would, in effect, destroy the conclusiveness of the "final decree" and postpone finality to an indefinite time to be determined at the whim of the purchaser.

Appellant makes one last effort to prevent the defeat of his initial contention; he claims that by seeking an amendment he is not attempting "to reopen any final decree." To state the contention is to answer it. Here, having obtained a final decree, appellant wants the court to reopen, reconsider and undo the very thing he originally sought. In short, under the guise of amending the decree, he wants it vacated. The statute does not permit

this. In addition, Maryland Rule 625 firmly establishes that the court shall have revisory power and control of a final and enrolled judgment or decree *only* in case of fraud, mistake, or irregularity.

### (ii)

Next, Hardisty argues that the chancellor had no authority to enter a money judgment against him; as, he contends that the payment of any balance owed by a successful bidder is only a condition precedent to the obtaining of a deed to the property and is not mandated by the statute. In fact, appellant goes even further and suggests that if a purchaser does not want a deed the chancellor lacks the authority to order him to pay the balance of the bid price to the collector of taxes. We cannot agree.

Appellant struggles to find support for his contention by interpreting an amendment to Art. 81, § 115, which was passed subsequent to the trial here, as indicating the legislature's agreement with his position. A provision, which became effective July 1, 1972, was added to § 115 stating:

> "If the holder of the certificate of sale does not comply with the terms of the final decree of the court within ninety (90) days as to payments to the collector of the balance of the purchase price due on account of the purchase price of the property and of all taxes, interest, and penalties accruing subsequent to the date of sale, that decree may be stricken by the court upon the motion of an interested party for good cause shown."

But, even if we assume, for purposes of this case, that this new provision does not disturb any vested or accrued substantive rights and should be applied on appeal, Hardisty's case is not advanced. *See Yorkdale v. Powell,* 237 Md. 121, 124, 205 A. 2d 269 (1964); *Tudor Arms Apts. v. Shaffer,* 191 Md. 342, 62 A. 2d 346 (1948); *Day*

*v. Day,* 22 Md. 530 (1865). Appellant reads this enactment to infer that the legislature "recognized that appellees or any other former landowner in their position had no right to seek of the court an order compelling appellant to pay the surplus of his bid, and that there existed a need for the relief provided by its re-enactment of such section." We do not accept this interpretation. While we agree that the "interested party" mentioned in the statute refers to the owner of the land at the time of the sale or anyone claiming rights through him, not including, however, the purchaser of the certificate, his heirs or assigns, that is as far as our agreement with appellant extends. Unlike Hardisty, we construe this statute to provide an additional, not an exclusive, remedy to a person in the position of appellees. And as the real parties in interest appellees are entitled, if not obliged, to seek this relief in their own names. Rule 203; *Allen v. Kaplan,* 255 Md. 409, 418-19, 258 A. 2d 211 (1969); *Katski v. Boehm,* 249 Md. 568, 581, 241 A. 2d 129 (1968); *Sanner v. Guard,* 236 Md. 271, 277, 203 A. 2d 885 (1964); *Glens Falls v. Balto. County,* 230 Md. 524, 528, 187 A. 2d 875 (1963).

We think it is clear that the chancellor had the authority to fashion the relief he did here. The jurisdiction of the court in acting on a bill filed to foreclose the right of redemption is set forth in Art. 81, § 101. There, it is specified that the equity court:

> "shall have full equity jurisdiction to give full and complete relief under the provisions of this subtitle, in accordance with the general equity jurisdiction and practice of the said court, and with all provisions of all laws and rules of court relating to the equity courts of the county in which the property is located, except as otherwise provided in this subtitle . . . ."

*See Empire Furniture Co. v. Hanley,* 191 Md. 386, 395, 62 A. 2d 342 (1948). *See also* Art. 81, § 112. It is a well

established principle that once an equity court has acquired jurisdiction, it may, in proper circumstances, render a money decree arising out of the issues litigated. *Stirn v. Segall,* 251 Md. 240, 245, 247 A. 2d 252 (1968). And, an equity court, having once obtained jurisdiction over a controversy, will retain it in order to administer complete relief and enforce its decrees. *Jacham Enterprises v. Hoffman,* 233 Md. 432, 438, 197 A. 2d 128 (1964) and cases cited therein.

Furthermore, as recognized by Art. 81, § 122, the position of a certificate holder in a proceeding to foreclose the right of redemption is analogous to that of a mortgagee in foreclosure proceedings. *Keefauver v. Richardson,* 233 Md. 545, 550, 197 A. 2d 438 (1964) ; *Shapiro v. National Color Ptg. Co.,* 191 Md. 194, 60 A. 2d 679 (1948). So, the appellees properly filed a petition to compel payment of the unpaid portion of the bid price and, as in a mortgage foreclosure case, the chancellor could grant appropriate relief to compel payment. *Cf. Armstrong v. Citizens,* 244 Md. 545, 224 A. 2d 456 (1966). As Judge Barnes stated for this Court in *Armstrong, supra* at 550, in discussing a motion to compel payment of a surplus which remained after a foreclosure sale based upon a mortgage:

> "When an audit is finally confirmed the approved practice is to accompany the order [of final ratification] with an order to pay the amounts allowed to the parties in interest; but the judgment of the court is as effectually pronounced without this order. After such an adjudication an order directing payment would at any time be passed as a matter of course. The order of final ratification is to be respected and obeyed without question by the party directed to disburse the fund. In the case of failure to do so, the remedy may be by petition by the injured party asking that payment be com-

pelled; it is not necessary to file an original bill." *Miller, Equity Procedure,* 652-53, § 554.

By analogy, we think appellees were entitled to have Hardisty compelled, through the entry of a money judgment against him, to make the payments obviously contemplated by the decree that vested title to this property in him.

### (iii)

Appellant's final contention is that, by entering judgment against him in the amount of the balance owed on the bid price, the chancellor's decree is inequitable in that it will necessitate the payment of twice the bid amount in order to obtain a deed from the collector. Hardisty says he must now satisfy this judgment in favor of appellees and then must also pay the balance of the bid price to the collector. Again, we do not agree. Appellees, as the real parties in interest, are the ones entitled to recover any excess over the amount necessary to satisfy taxes, interest, penalties and costs. The collector is merely a convenient conduit through which the funds flow. Article 81, § 81 provides that:

"Upon receipt of said balance and the said subsequent taxes and interest and penalties thereon, the collector shall execute and deliver a proper deed to the purchaser and *shall hold any balance over and above the amount required for the payment of taxes, interest, penalties, and costs of sale, for the use of the person entitled thereto.*" (Emphasis added.)

The collector, therefore, would have to recognize the payment of the judgment of record as satisfying the requirement of payment to the collector himself. Thus, upon proof of satisfaction of this judgment and payment of any subsequent taxes, interest, and penalties owed, the collector is required to execute a proper deed when one is presented by the certificate holder.

*Decree affirmed. Costs to be paid by the appellant.*