REPORTED
IN THE COURT OF SPECIAL APPEALS
OF MARYLAND

CONSOLIDATED CASES

Nos. 696, 697, 698

September Term, 2014

---

KONA PROPERTIES, LLC

v.

W.D.B. CORP., INC.

---

LIENLOGIC REO F1, LLC

v.

N.B.S., INC.

---

2009 DRR-ETS, LLC

v.

S&S PARTNERSHIP

---

Zarnoch,
Kehoe,
Leahy,

JJ.

---

Opinion by Leahy, J.

---

Filed: August 28, 2015

We consider appeals from separate orders entered in three foreclosure cases in the Circuit Court for Baltimore City. We consolidated the cases, upon motion,[1] because they present equivalent and undisputed factual scenarios. In each case, the owner of a residential property failed to pay property taxes owed to Baltimore City. The City commenced a tax sale, and the winning bidder paid the delinquent taxes and fees and received a certificate of tax sale in exchange. The balance of the bid price, i.e. the bid surplus, remained on credit to be paid to the property owner. After the requisite statutory waiting period, the holder of each tax sale certificate petitioned the Circuit Court for Baltimore City to foreclose the property owners' right of redemption. The circuit court entered judgment foreclosing the right of redemption in each case.

Though these judgments were entered against them, the initial property owners or mortgage holders for each property, namely, W.D.B. Corp., Inc., N.B.S., Inc., and S&S Partnership (collectively Appellees), filed motions in the circuit court to enforce the judgments because they each wanted to receive the surplus of the bid purchase on their property.[2] The motions to enforce the judgments were opposed by the certificate holders: Kona Properties, LLC, LienLogic REO F1, LLC, and 2009 DRR-ETS, LLC (collectively

---

[1] On April 9, 2015, Appellants each filed a motion to consolidate, through the single attorney, Mr. Stefan B. Ades, representing them in their appeals. This highlights a feature of these cases that we revisit throughout this opinion—the purchasers of the tax sale certificates are linked by common addresses and attorneys.

[2] After payment of the bid surplus to the owner and payment of outstanding taxes and fees to the City, the certificate holder is able to obtain the deed to the property pursuant to Tax-Property Article § 14-847 of the Maryland Code (1985, 2012 Repl. Vol., 2014 Supp.).

Appellants).  Appellants raised standing and jurisdictional issues, contending, paradoxically,[3] that the court could not enforce the judgments that Appellants had obtained because Appellants had failed to perfect service upon certain Appellees.  Appellants also argued that Appellees' motions to enforce the judgments should be denied because the General Assembly had made changes to the tax sale statute superseding *Hardisty v. Kay*, 268 Md. 202 (1973), which held, *inter alia*, that a property owner is entitled to obtain a money judgment to compel a certificate holder to pay the surplus bid.  Ultimately, Appellants' arguments failed.  The circuit court granted Appellees' motions to enforce the judgments and required the certificate holders to pay the bid surpluses to the respective property owners.  The certificate holders appealed.

Appellants Kona Properties, LLC ("Kona") and LienLogic REO F1, LLC ("LienLogic") present three threshold issues, which we have rephrased:

I.  Whether the circuit court erred by not vacating the judgments foreclosing the right of redemption because Kona and LienLogic failed to effect service on Appellees WDB Corp. and NBS, Inc.

II.  Whether the circuit court erred in finding that Appellees had standing to bring their motion.

III.  Whether the circuit court erred by not striking the judgments foreclosing the right of redemption based upon the motions of Baltimore City and Montego Bay Properties, LLC to strike the judgments because Kona and LienLogic failed to pay the taxes and bid surplus within 90 days of the entry of the judgments, pursuant to Tax-Property Article § 14-847(d).

Appellant 2009 DRR-ETS, LLC ("DRR-ETS") presents the following additional

---

[3] Irony is the leitmotif that runs counterpoint to the LLC linkage theme throughout these cases.

issue:

IV. Whether the circuit court erred in denying its motion to strike the motion to enforce judgment filed by S&S Partnership because the motion did not reference applicable law as required by Maryland Rule 2-311(c).

All three Appellants present the following issues for our consideration:

V. Whether the court erred in relying upon the ruling in *Hardisty v. Kay* to hold that Appellees could enforce the judgments against Appellants to obtain the surplus bid.

VI. Whether the court erred in failing to find that Appellees' motions to enforce the judgments would lead to unjust enrichment.

VII. Whether enforcing the judgments against Appellants violates public policy.

We hold that the circuit court did not abuse its discretion in failing to strike the judgments foreclosing the right of redemption, nor err in entering judgments against the Appellants ordering them to pay the bid surpluses to Appellees. We further hold that *Hardisty v. Kay* remains good law and that the judgments do not violate public policy nor do they unjustly enrich Appellees.

**Background**

These cases contain a common thread tying each together and furnishing the reason we granted the motions to consolidate. In each case, subsequent to the tax sale, the tax sale certificate was transferred to another limited liability company that shared either the same address, attorney and/or incorporator. The new holder of the tax sale certificate foreclosed the property owner's right of redemption and, for some unexplained reason, the certificate holder later decided that it did not want the property and failed to

3

pay the bid price or the outstanding taxes and fees—payment of which is a prerequisite to obtaining the deed to the property. The original property owner or mortgage holder in each case later filed a motion in the circuit court to enforce the judgment against the certificate holder, requiring the certificate holder to pay taxes accruing after the tax sale and to pay the surplus bid to the property owner or mortgage holder. The circuit court granted all three motions to enforce and required the certificate holders to pay the taxes and bid surpluses to the collector.[4]

**Tax Sale Statute**

To lay a foundation for understanding the mazy foreclosures on appeal, we begin with an explication of the tax sale statute and how the process should normally transpire. The focus in the present appeal is whether; after the tax sale certificate holder obtains a judgment foreclosing the property owner's right of redemption, the property owner can move to enforce the judgment ordering the certificate holder to pay the bid surplus to the property owner, and whether, in response, the certificate holder can move to strike or vacate the judgment it obtained earlier to avoid paying the bid surplus and interim taxes.

**Tax Sale and Payment of Back Taxes**

The tax sale procedure is set forth in Maryland Code (1985, 2012 Repl. Vol., 2014

---

[4] A "collector" is "an officer of a county or municipal corporation who has a duty to collect or remit taxes." Maryland Code, (1985, 2012 Repl. Vol.), Tax-Property Article, § 1-101(e). The Director of Finance is the collector for Baltimore City. *See Estime v. King*, 196 Md. App. 296, 300 n.2 (2010).

Supp.), Tax-Property Article ("TP") §§ 14-801 through -870.[5]  "[F]or a tax sale to be effective substantial compliance with the statute is required."  *Simms v. Scheve,* 298 Md. 1, 3 (1983) (citing *Free v. Greene*, 175 Md. 36, 42 (1938); *McMahon v. Crean*, 109 Md. 652, 666 (1909)).

> The Court of Appeals described the basic steps of the tax sale process:

> Unpaid taxes on real estate constitute a lien on that property. [§ 14-804]. Generally, within two years from the date taxes become in arrears the jurisdiction's collector must sell the land. [§ 14-808]. Notice of the proposed sale must be given to the owner at least thirty days before the property is advertised for sale and the owner is notified that if he does not pay the taxes within thirty days, the property will be sold. [§ 14-812]. After the sale is properly advertised, the property is sold at public auction. [§ 14-817].

*Scheve v. Shudder, Inc.*, 328 Md. 363, 369-70 (1992) (quoting *Simms,* 298 Md. at 3-4 (citations omitted)), *cited with approval in Quillens v. Moore*, 399 Md. 97 (2007).

At the public sale, the purchaser pays the back taxes due on the property and is in turn "given a certificate of sale which includes a description of the property, the amount for which the property was sold, and information as to the time in which an action to foreclose the owner's right of redemption must be brought." *Id.*; *see* § 14-820.  It is important to note that the tax sale purchaser does not pay the entire bid price at the time of the tax sale.  The purchaser pays the back taxes, and the rest of the bid remains on credit, to be paid after the tax sale certificate holder forecloses the title owner's right of redemption.  The title owner of the property may redeem the property at any time until

---

[5] Hereinafter, unless otherwise indicated, all statutory citations are to Maryland Code (1985, 2012 Repl. Vol., 2014 Supp.), Tax-Property Article.

the right of redemption has been finally foreclosed by paying the required sum to the collector, who transfers the money to the tax sale purchaser in exchange for the tax sale certificate. *Id.*; *see* §§ 14-827 to 14-828.

**Foreclosing the Right of Redemption**

The purchaser's ability to foreclose the right of redemption is defined under sections 14-832.1 to 14-848.

> These provisions are to be ["construed to ensure a balance between: (1) the due process and redemption rights of persons that own or have an interest in property sold at a tax sale; and (2) the public policy of providing marketable title to property that is sold at a tax sale through the foreclosure of the right of redemption."] [§ 14-832]. The holder of the certificate of sale may file [a complaint] to foreclose the owner's right of redemption after [six months (nine months in Baltimore City)] from the date of the sale.... The [complaint] must be filed within two years or the certificate is void. The owner may redeem the property at any time until the right of redemption has been finally foreclosed. [§ 14-833].
> The purchaser initiates the foreclosure proceeding in the [circuit] court by filing a [complaint as detailed in § 14-835] and attaching the certificate of sale issued by the collector...."[6]

*Shudder*, 328 Md. at 370-71.

The tax sale statute sets out several steps that must be complied with before a circuit court may enter a final judgment foreclosing the property owner's right of redemption under § 14-844: (1) the certificate holder must file a complaint, conforming with § 14-835(a) within two years following the sale; (2) the certificate holder must attach the certificate of sale pursuant to § 14-835(b); (3) the certificate holder must attach

---

[6] The Court in *Shudder* updated the language of *Simms* to reflect the recodification of the Tax-Property Article adopted in 1985. *See* 1985 Md. Laws, ch. 8, § 2.

an affidavit of title search (§ 14-838); and (4) the court must issue process and public notice under §§ 14-839 and 14-840, setting out the time after which the right of redemption will be foreclosed.

**Liability of the Certificate Holder to Pay Taxes Accruing after Tax Sale**

Once the court enters final judgment to foreclose the right of redemption, the holder of the tax sale certificate "immediately becomes liable for the payment of all taxes due and payable after the judgment. . . . On the entry of judgment, the plaintiff shall pay the collector any surplus bid and all taxes together with interest and penalties on the taxes due on the property." § 14-844(d). Section 14-831 clarifies that "[a]ll taxes accruing after the date of sale, together with interest and penalties on the taxes, are additional liens against the property and on passage of the final [judgment foreclosing the right of redemption], are immediately due and payable by the holder of the certificate of sale." Thus, even though the taxes are not assessed to the certificate holder until the entry of final judgment, upon entry of that judgment, the certificate holder is liable for all taxes, interest, and penalties accruing after the tax sale.[7] § 14-831. Notably, even though the

---

[7] Section 14-831 states, in pertinent part,

> Once the judgment is passed, the property shall be transferred on the assessment books or records to the holder of the certificate of sale notwithstanding the provisions of § 3-104 of the Real Property Article. After the transfer, the property shall be assessed to the holder of the certificate of sale for property tax purposes. All taxes accruing after the date of sale, together with interest and penalties on the taxes, are additional liens against the property and on passage of the final decree, are immediately due and payable by the holder of the certificate of sale except as provided under § 14-826 of this subtitle. The collector may not deliver a deed to the person
> (Continued…)

7

owner of the property may not redeem the property after the entry of final judgment, the certificate holder does not receive the deed, and thus, may not take possession of the property, until the certificate holder pays the collector the surplus bid and all subsequent taxes on the property. § 14-831. If the certificate holder does not pay the taxes in full, the property is left in limbo: the prior owner may not sell the property and knows that, as soon as the certificate holder pays the collector, it will no longer have title to the property, however, the certificate holder *also* does not have full rights to the property because the collector has not issued a deed to the certificate holder.

**Remedies for Further Failure to Pay Taxes**

The taxing entity, such as the City of Baltimore in the cases before this Court, may bring the property out of the limbo created by the certificate holder's failure to pay the taxes accruing after the tax sale by selling the property pursuant to the lien against it at a second tax sale. *See Prince George's Homes, Inc. v. Cahn*, 283 Md. 76, 79-80 (1978). This solution comes with both limitations and costs. During the two-year period in which a petition to foreclose the right of redemption may be filed, there can be no other tax sale, and taxes continue to accrue until the holder of the certificate of sale has had an opportunity to file his petition and to secure a deed from the collector. *See id.* at 79-80, 81-83 (holding that the city or county may not sell the property a second time until the court has entered final judgment or has dismissed the case). Once the foreclosure

---

(…continued)
      entitled to the deed until all subsequent taxes, together with interest and penalties on the taxes, are paid in full.

proceedings are concluded, however, resale of the property for nonpayment of taxes is permitted. If the certificate holder fails to pay the bid surplus and taxes on the property, the taxing entity may bring suit against the certificate holder pursuant to § 14-864 within seven years from the date the tax is due. Thus, the City is limited by the statutory time frames from reselling the property quickly to obtain the delinquent taxes, and the City, as well as the judicial system, is burdened with the costs of having to repeat the tax sale foreclosure process.

The failure to pay taxes accruing after the tax sale are pervasive issues in these consolidated cases. As we turn to address the merits of each case, we note that in each circumstance, the tax sale certificate holder, after receiving an entry of final judgment foreclosing the prior owner's right of redemption, failed to pay the taxes accruing on the property after the tax sale and failed to pay the bid surplus to the owner, as required by §§ 14-831 and 14-844. This contributes to a cycle whereby the owners do not receive compensation for the property, yet cannot sell it otherwise, and the city must wait until the certificate holder forecloses the right of redemption—a process which may take years—before reselling the property to recoup the taxes that the certificate holder failed to pay after receiving final judgment.

We now recount the facts in each of the consolidated cases.

**Kona Properties, LLC v. WDB Corp Inc.**

At some point before April 14, 2007, W.D.B. Corp., Inc. ("WDB"), the owner of a rowhouse located at 5405 Park Heights Avenue, Baltimore near Pimlico Race Course, failed to pay the property taxes due to the City. On May 14, 2007, the Baltimore City tax

9

collector held a public tax sale and sold the property to Heartwood 88, LLC ("Heartwood"). Heartwood bid $46,953.49 and paid the outstanding taxes on the property along with interest, penalties, and expenses incurred in making the sale, which amounted to $1,943.06.[8] On November 16, 2007, Heartwood filed a complaint to foreclose the right of redemption. Named in the complaint were defendants WDB, Goldscheider Family Trust,[9] Baltimore City, and "[a]ll unknown owners of the property described below; all . . . persons having or claiming to have any interest in the property and premises situate[d] in the City of Baltimore," as required by §§ 14-835 and 14-836.

In the complaint, Heartwood averred that it complied with the requirements dictated by the tax sale statute as prerequisites to foreclosure of the right of redemption. Among other things, Heartwood averred (1) it is the owner of the tax sale certificate either by direct purchase or by assignment; (2) it conducted a title search for the past 40 years, which found that fee simple title or other legal interest was vested in the defendants named in the complaint; and (3) it sent two pre-suit notices of the tax sale to the interested parties. Heartwood requested that the court enter a final judgment

---

[8] The residue of the bid price, $45,010.43, remained on credit. § 14-818(a)(1)(i).

[9] Although WDB is the owner the property, WDB pays ground rent on the property to the Goldscheider Family Trust. The properties at issue in this case are all subject to ground rent, necessitating that the certificate holders received leasehold interests instead of fees simple. *See Muskin v. State Dep't of Assessments & Taxation*, 422 Md. 544, 550 (2011) (citing *Kolker v. Biggs,* 203 Md. 137, 141 (1953)) ("A ground rent lease, common in Baltimore City, is a renewable 99 year lease where the fee simple owner of a property receives an annual or semi-annual payment ('ground rent') and retains the right to re-enter the property and terminate the lease if the leaseholder fails to pay.").

foreclosing all rights of redemption of the defendants and of all persons having or claiming to have any interest in the property and vesting an absolute and indefeasible title in fee simple or leasehold to the property in Heartwood. Heartwood also requested that the court send summons to the defendants and issue an order of publication, as required by § 14-840.

On November 30, 2007 (entered December 1, 2007), Heartwood filed a separate notice to defendants, pursuant to then Maryland Rule 14-502(b)(3),[10] stating, "[you] are hereby notified of the filing of this Complaint and are warned to redeem the property or to file an answer to the complaint on or before . . . [t]he expiration date of the period described in the summons. . . ."[11] Notice was advertised in *The Daily Record* and was posted on the property. A process server affirmed that, on February 11, 13, and 15, 2008, he attempted to serve WDB and its resident agent with process without success, and that

---

[10] On May 1, 2013, the Rules Committee amended Maryland Rule 14-502, amending and renaming subsection (b) to subsection (c). As amended, subsection (c) requires the complaint to be accompanied by the certificate of sale; a title search supported by an affidavit; a description of the property; the time within which a defendant must file an answer to the complaint or redeem the property; a statement that failure to answer or redeem the property within the time allowed may result in a judgment foreclosing the right of redemption; and an affidavit stating the date that the notices required by law were given, the name and address of the persons to whom the notices were given, and the manner of the delivery of the notice, and the amount required to redeem the property.

[11] Generally, the summonses required defendants to file a written answer or petition to redeem within 30 days of receipt of service.

on February 17, 2008, he personally served Edward Goldscheider, a trustee for Goldscheider Family Trust.[12]

Meanwhile, Heartwood assigned the entire right, title, and interest in the certificate of tax sale for 5405 Park Heights Avenue to Kona Properties, LLC ("Kona"),[13] as reflected in a line filed by Heartwood on October 30, 2012, substituting Kona as plaintiff. Attorneys Anthony J. De Laurentis, John K. Reiff, and John E. Reid represented both Heartwood and Kona. [14]

On October 31, 2008 (entered November 3, 2008), Kona certified that a process server was able to substitute service on WDB by serving Ella McDaniel, an administrative assistant at the State Department of Assessments and Taxation ("SDAT") on June 2, 2008, pursuant to Maryland Rule 2-124(o).[15] On November 19, 2008, the

---

[12] The record reflects that in each case before us, the certificate holder mailed a notice of the foreclosure proceeding to the tenants occupying the property, indicating that the property was being rented during the months after the tax sale.

[13] Section 14-821 provides, in pertinent part, that "an assignment of the certificate of sale vests in the assignee, or the legal representative of the assignee, all the right, title, and interest of the original purchaser." The assignment states that it was executed "FOR VALUE RECEIVED."

[14] Although Heartwood is organized in Florida, its resident agent in Maryland is Anthony J. De Laurentis, and Kona was organized here in Maryland by its resident agent, John K. Reiff. All companies share the same Maryland address and suite number. We take judicial notice of Appellants' articles of organization and resident agent filings, which are matters of public record on file with the State Department of Assessments and Taxation. *See Thomas v. Rowhouses, Inc.*, 206 Md. App. 72, 75 n.3 (2012).

[15] Rule 2-124(o) permits substituted service upon State Department of Assessments and Taxation if the entity has no resident agent, the resident agent is no longer at the address for service of process maintained with SDAT, or two good faith attempts on separate days to serve the resident agent have failed.

court entered a judgment foreclosing the right of redemption of all known defendants. The judgment vested in Kona an absolute and indefeasible leasehold title, free of encumbrances, except for taxes and municipal liens accruing after the tax sale. It ordered the Director of Finance to deliver a deed to Kona and ordered the Supervisor of Assessments of Baltimore City to enroll Kona as the leasehold owner of the rowhouse near Pimlico. However, Kona's receipt of the deed was contingent on its payment of the bid surplus and all taxes, fees, and penalties accruing on the rowhouse after the tax sale.[16] § 14-847(a)(1) ("[T]he judgment of the court shall direct the collector to execute a deed to the holder of the certificate of sale in fee simple or in leasehold, as appropriate, on payment to the collector of the balance of the purchase price, due on account of the purchase price of the property, together with all taxes and interest and penalties on the property that accrue after the date of sale.").

After Kona received judgment foreclosing WDB's right of redemption, Kona never paid the surplus bid to WDB or the taxes to the City of Baltimore on the Park Heights Avenue rowhouse. A second tax lien was filed against the property, and Baltimore City was forced to hold a second tax sale. After bidding on the property, Montego Bay Properties, LLC ("Montego Bay")—another company, with the same resident agent and attorneys as Kona and Heartwood—received a tax sale certificate on July 15, 2010. Throughout this entire time, WDB never entered an appearance, answer, or contested the foreclosure proceedings; however, because neither Heartwood, Kona,

---

[16] All taxes accruing after the tax sale were assessed to Kona after it received the judgment foreclosing the right of redemption, pursuant to §§ 14-831 and 14-844.

nor Montego Bay paid the taxes and surplus bid, no tax sale certificate holder received a deed to the property, leaving WDB in possession of the rowhouse.

More than two years later, on March 1, 2013, Montego Bay, as holder of the subsequent tax sale certificate, filed a motion to strike the judgment foreclosing the right of redemption (against WDB) entered on November 19, 2008, pursuant to § 14-847(d). Montego Bay wanted to strike the judgment because it believed the judgment entered in favor of Kona created a cloud on title that could affect Montego Bay's rights. It alleged that Kona had failed to pay the purchase price and taxes owed to the collector and that its subsequent tax sale certificate was prima facie evidence that payment by Kona was not made within 90 days as required by statute. Defendant WDB—having not answered the complaint five years earlier and having never received the bid surplus—opposed the motion and notified the court of a conflict of interest between Kona and Montego Bay resulting from the fact that they were under common ownership and represented by the same counsel. WDB argued that the Montego Bay tax sale did not affect the case before the court—viz., Kona owed WDB the bid balance irrespective of a tax sale that took place after the court entered judgment foreclosing the right of redemption. On March 21, 2013, by the request of the court, Baltimore City responded to the motion to strike judgment, confirming that Kona never picked up the deed for the property at 5405 Park Heights Avenue and never tendered payment for the balance of the purchase price or subsequent tax liens that accrued, causing the property to be placed in the 2010 tax sale.

WDB filed a Motion to Enforce Judgment against Kona for the surplus bid owed to WDB as the owner of the property before the tax sale, pursuant to the Court of

14

Appeals' holding in *Hardisty v. Kay*, discussed *infra*. WDB stated that "the residue of the purchase price, $45,010.43 ([]"surplus bid") remained on credit, pursuant to §14-818(a)(l)(i), Tax-Property Art. . . . ." and, "following entry of said Order granting judgment [foreclosing the right of redemption] Kona [] has failed to pay the City as collector its surplus bid amount of $45,010.43 as required by Tax-Property Art. §14-844(d)." Kona opposed the motion to enforce judgment, by asserting, aberrantly, that because it had not effected proper service on defendant WDB, the court did not have personal jurisdiction over WDB and so the court could not now enforce the judgment. As explained in more detail in our discussion below, Kona also argued that *Hardisty v. Kay* has been superseded by changes to the tax sale statute, and therefore the title property owner could not enforce the judgment to receive the bid surplus from the certificate holder. On May 9, 2014, the circuit court held a hearing to resolve the outstanding motions in this case, along with the two other cases consolidated on appeal.

After a hearing on May 9, 2014, addressing the motions of all parties in these appeals, Judge Charles J. Peters entered three orders on May 13, 2014 granting Appellees' respective motions to enforce judgment and requiring Kona and the other Appellants to pay the bid surpluses and taxes due to the collector pursuant to the Court of Appeals' holdings in *Scheve v. Shudder* and *Hardisty v. Kay*. Kona noted a timely appeal on June 11, 2014.

Also on June 11, 2014, WDB filed a motion to alter or amend the May 13, 2014, order to reflect that Kona is required to pay WDB the surplus bid, in the amount of $45,010.43 plus post-judgment interest so the amount could be reduced to a money

15

judgment and operate as a lien on the property. On August 7, 2014, the court granted the motion in part, ordering "that a **monetary judgment** in the amount of the bid surplus, **$45,010.43,** is granted against Substituted Plaintiff Kona Properties, LLC and in favor of Defendant W.D.B. Corp., Inc."[17]

**LienLogic REO F1 LLC v. N.B.S., Inc.**

The second case presents a similar factual scenario to the one described above. The title owner of the property, 3015 Virginia Avenue LLC, failed to pay the taxes due. On May 17, 2010, the Baltimore City tax collector held a public tax sale and sold the single family home located at 3015 Virginia Avenue, also near Pimlico, to ETS Maryland, LLC. ETS bid $43,935.24 and paid the outstanding taxes on the property along with interest, penalties, and expenses incurred in making the sale, which amounted to $3,253.58. On May 18, 2011, ETS Maryland filed a complaint to foreclose the right of redemption, which named as defendants 3015 Virginia Avenue LLC, N.B.S., Inc. ("NBS"), James W. Holderness, Trustee, Daniel Menchel, Trustee, Baltimore City, and all persons having or claiming to have any interest in the property. Similar to the Kona case, in the complaint, ETS averred that it complied with the requirements dictated by the tax sale statute as prerequisites to foreclosing of the right of redemption and that it had served the defendants. The process server affirmed by affidavit that, on June 30, 2011, he personally served Harriette Ladson, the resident agent for 3015 Virginia Avenue LLC, and, on July 5, 2011, he personally served Ben Seiderman, a staff member for NBS.

---

[17] The order did not address the taxes, interest and penalties also due the Collector per the May 9, 2014 order.

ETS assigned the certificate of tax sale for the 3015 Virginia Avenue property to LienLogic REO F1, LLC ("LienLogic"), and substituted LienLogic as plaintiff on October 1, 2012. As in the Kona case, ETS and LienLogic were represented by William M. O'Connell and Stefan B. Ades, both operating out of the same office as Anthony J. De Laurentis, John K. Reiff, and John E. Reid—3604 Eastern Avenue, Suite #300.[18]

Also on October 1, 2012, LienLogic filed an affidavit of compliance and request for judgment that substantiated the claims and relief prayed for in the original complaint filed by ETS. The affidavit of compliance detailed the methods of service and affirmed that service was proper on all defendants. The circuit court entered a judgment on December 5, 2012, foreclosing the rights of redemption of the defendants and allowing LienLogic to obtain the deed to the property contingent upon its payment of the bid surplus and all taxes, fees, and penalties accruing after the tax sale. § 14-847(a)(1). Similar to the Kona case, LienLogic did not pay the bid surplus, taxes and fees, and did not receive the deed to the property.

Again as in the Kona case, on March 7, 2013, months after the court entered judgment foreclosing the right of redemption, NBS answered the complaint to foreclose its right of redemption and asked the court to enter a monetary judgment against LienLogic for the surplus bid owed to NBS under a purchase money deed of trust, dated October 25, 1994. LienLogic also moved to vacate the judgment foreclosing the right of

_____

[18] Interestingly, although ETS is organized in Delaware, its resident agent in Maryland is Anthony J. De Laurentis, and Kona was organized here in Maryland by its resident agent, John K. Reiff. All companies have the same Maryland address and suite number.

redemption arguing that the court lacked jurisdiction because the property owner was not properly served.[19]

After the May 9, 2014 hearing, mentioned *supra*, on May 13, 2014, Judge Peters entered the orders discussed *supra*, including an order directing LienLogic to pay the bid surplus and taxes due. The court also denied LienLogic's motion to vacate. LienLogic noted a timely appeal on June 11, 2014.

On July 8, 2014, after LienLogic noted its appeal to this court, NBS asked the circuit court to enter a money judgment for payment of the surplus bid in the amount of $40,681.66. On August 7, 2014, the court granted the motion and entered an amended order.

**2009 DRR-ETS LLC v. S&S Partnership**

In the third case, similar to the first two, a bidder purchased the tax sale certificate for a property in Baltimore City, assigned the tax sale certificate to a different, but related, LLC, which subsequently foreclosed the right of redemption.[20] Approximately

---

[19] NBS filed an affidavit from its president, which averred that NBS had, in fact, been served with process because Ben Seiderman was authorized to accept service on behalf of NBS and the complaint was promptly handed to NBS's president. On December 13, 2013, Baltimore City filed a motion to strike judgment, pursuant to § 14-847(d), to which no party filed a written response.

[20] On April 1, 2011, ETS assigned the certificate of tax sale for the rowhouse at 3924 Belle Avenue to 2009 DRR-ETS LLC and substituted DRR-ETS as plaintiff. Anthony J. De Laurentis, John K. Reiff, and John E. Reid organized DRR-ETS and operated the LLC out of the same office, 3604 Eastern Avenue, Suite #300, that they operated LienLogic's Maryland activities, as well as Kona, and Montego Bay, discussed *supra*. William M. O'Connell and Stefan B. Ades, both entered appearances to represent DRR-ETS as well.

one year later, on November 18, 2013, S&S Partnership asked the court to enter a monetary judgment against ETS for the surplus bid owed to S&S Partnership as a mortgagee of the property under a mortgage assigned from the title property owner. DRR-ETS moved to strike or, in the alternative, opposed the motion by asserting grounds similar to those argued by the two tax sale certificate holders in the two other cases consolidated here. After the May 9, 2014 hearing, mentioned *supra*, on May 13, 2014, Judge Peters entered the orders discussed *supra*, including an order directing DRR-ETS to pay the bid surplus and taxes due and denying its motion to vacate. DRR-ETS noted a timely appeal on June 11, 2014.[21]

### Discussion

### I. Post-Judgment Proceedings

In each case, subsequent to the entry of judgment the defendant below requested that the circuit court amend the order to reflect the exact amount owed by the certificate holder.[22] We do not decide the propriety of the circuit court's entry of particular monetary judgments,[23] because no party appealed from the amended orders.[24]

---

[21] Also on June 11, 2014, and just as in the Kona case, S&S Partnership filed a motion to alter or amend the order to reflect that DRR-ETS is required to pay S&S Partnership the surplus bid, in the amount of $29,722.18. On August 7, 2014, the court granted the motion.

[22] Courts retain the power to enforce judgments, *see* Maryland Rule 2-631, and pursuant to Maryland Rule 2-648(a), a circuit court may enter a money judgment to the extent of any amount due if a party fails to comply with a judgment mandating the payment of money. Appellees here asked the court to amend the orders to specify a monetary amount so they could enforce the judgements as money judgments against Appellants directly if Appellants failed to comply with the orders. The initial orders

(Continued…)

19

The question remains whether the May 2014 orders from which Appellants appealed were final judgments. For there to be an entry of a final judgment that triggers the time for filing an appeal, the following must be present in the record: a final judgment that has the effect of putting the parties out of court, set out in a separate document that specifies the judgment and that is a document separate from the docket entry. *Hiob v. Progressive Am. Ins. Co.*, 440 Md. 466, 503 (2014). The document must declare judicial

---

(…continued)
required payment of "all taxes together with interest and penalties on the taxes" to the collector, who is otherwise required to pay the surplus bid to the person entitled to the balance (Appellees) pursuant to TP § 14-818(a)(4).

[23] Generally, the circuit court may entertain a motion to alter or amend a judgment in a case where an appeal has been filed, if the motion would not affect "the subject matter or justiciability of the appeal." *Brethren Mut. Ins. Co. v. Suchoza*, 212 Md. App. 43, 67 (quoting *Kent Island, LLC v. DiNapoli*, 430 Md. 348, 361 (2013)) (internal quotation marks omitted), *cert. denied,* 434 Md. 312 (2013). "After an appeal is filed, a trial court may not act to frustrate the actions of an appellate court. Post-appeal orders which affect the subject matter of the appeal are prohibited." *In re Emileigh F.*, 355 Md. 198, 202-03 (1999) (citing *State v. Peterson,* 315 Md. 73 (1989); *Dent v. Simmons,* 61 Md. App. 122 (1985)). If ruling on the motion would affect the subject matter of the appeal, then the circuit court's ruling is subject to reversal by the appellate court. *Brethren Mut. Ins. Co.*, 212 Md. App. at 67. The subject matter of this appeal is whether the circuit court could *enforce the judgments against the certificate holders* and require them to pay the surplus bids. Because the subject of this appeal is the propriety of requiring the tax sale certificate holders to pay the surplus bids to the prior owners, the later circuit court judgments—specifying the amount that the certificate holders were required to pay the property owners—did not concern the propriety of awards and therefore do not affect the subject matter of this appeal. We perceive, without deciding, the subsequent monetary judgments as collateral matters to the issues presented in this appeal. *Gallagher v. Gallagher*, 118 Md. App. 567, 590 (1997).

[24] Here, Appellees filed their respective motions to alter or amend judgment on June 11, 2014, more than 10 days after the entries of judgment. For that reason, each Appellant would have had to file another appeal within the 30 days of the entry of the respective amended judgments in order for this Court to consider the propriety of those judgments.

action that grants or denies specific relief in an unqualified way. *Id.* Further, the document must have been signed by the judge or the clerk, and, finally, the clerk must have docketed the judgment in accordance with the practice of the court. *Id.* To be a final judgment in the traditional sense, an order must not only settle an entire claim but also must "be intended by the court as an unqualified, final disposition of the matter in controversy[.]" *Rohrbeck v. Rohrbeck*, 318 Md. 28, 40 (1989). An order is an "unqualified final disposition" if it determines and concludes the rights involved, or denies the appellant the means of further prosecuting or defending his rights and interests in the subject matter of the proceeding. *Schuele v. Case Handyman & Remodeling Servs., LLC*, 412 Md. 555, 570-71 (2010).

The orders granting, *inter alia*, Appellees' motions to enforce judgment from which Appellants appealed constituted final judgments because they were entered as separate documents from the docket entry, were signed by the judge, and decided the issue of whether Appellants were obligated to pay the bid surplus and taxes, interest and penalties due under the original judgments to foreclose redemption rights. The orders had the hallmark of finality in that they put the parties out of court. The bid surplus is a sum certain and is calculated by subtracting the amount the bidder paid in taxes and fees at the tax sale to obtain the tax sale certificate from the amount bid on the property. TP § 14-818(a)(1). By directing Appellants to, "within 30 days of the date of this Order, pay the Collector any surplus bid and all taxes together with interest and penalties on the taxes due on" the properties, there was nothing left for the court to do to ensure that

Appellees received the bid surplus because the parties knew the amount of the bid surplus pursuant to TP § 14-818(a)(1)—and therefore knew exactly how much they had to pay.[25]

Normally, to receive the bid surplus, the former property owner requests the surplus funds from the collector. For example, in *Allstate Mortgage & Co. v. Mayor & City Council of Baltimore City*, the party entitled to the bid surplus did not request that the court determine the amount of the bid surplus and instead went directly to the collector to receive the sum. 214 Md. App. 395, 398 (2013). This is because the tax sale statute provides that the collector is required to pay this amount to the person entitled to it, unless there is a dispute regarding the "proper distribution of the balance." TP § 14-818(a)(4)(ii).

It was not necessary for the Appellees to request the amended judgments in order to receive the bid surpluses. They would have received the bid surpluses from the collector soon after Appellants paid the collector, as they were required to do by the orders. As stated in their motions to amend judgment, however, the Appellees requested monetary judgments in order to avail themselves of the enforcement procedures contained in the Maryland Rules (and not because the sum owed was uncertain). Therefore, the orders entered by the court on May 9, 2014 were not qualified in any sense—they determined and concluded the rights involved by requiring Appellants to pay the Collector any surplus bid and all taxes together with interest and penalties.

---

[25] *Cf.* TP § 8-420(c) ("[T]he collector shall prepare a tax roll that contains the information from the assessment roll that is necessary to prepare the property tax bill."), § 4-201 (providing that the collector collects the State, county, and municipal taxes that are due "and any interest, penalties, and service charges on the property tax that are due").

## II. Standing and Jurisdiction to Enter Judgment Foreclosing the Right of Redemption

We quickly dispense with the threshold standing and jurisdiction arguments made by Appellants LienLogic and Kona Properties. Appellants contend the circuit court did not have jurisdiction under Maryland Rule 2-507(b) to enforce the judgments against them because Appellees NBS and WDB were never properly served. They also make the corollary argument that Appellees do not possess standing to enforce the judgment because the court did not obtain jurisdiction over them. Appellees counter that Appellants cannot assert the due process rights of Appellees and that, even if they could, Appellants performed valid service on WDB, and NBS had actual notice of the proceedings. Further, Appellees maintain they have voluntarily submitted themselves to the jurisdiction of the court, which gives them standing to enforce the judgment. Finally, Appellees argue that Appellants cannot now contest service because they had previously submitted affidavits to the court stating that proper service was effected in each case.

The Court of Appeals in *Shudder*, *supra*, confronted and rejected arguments similar to those Appellants now make. 328 Md. 363. That case also presented factual circumstances similar to those of the instant case—"where the tax sale purchaser has filed suit to foreclose the right of redemption and taken all necessary steps to perfect the foreclosure of the right of redemption, but thereafter changed its mind." 328 Md. at 366. In *Shudder*, the Scheves were tax sale certificate holders who appealed the entry of judgment foreclosing the rights of redemption by the appellees, Shudder, Inc. and Bama, Inc. *Id.* The Scheves attempted to assert Shudder's rights to dismiss the case because the

Scheves failed to conform to the requirements for certifying service of process. *Id.* at 375. The Court described the Scheves' argument:

> The Scheves' next contention is that the circuit court could not enter a final judgment since they did not comply with the notice provisions of § 14-839; specifically, the Scheves point to their own failure to file an affidavit certifying the method and time of service. § 14-839(a)(5). Thus, they argue, all the prerequisites under the statute were not met and the circuit court was without jurisdiction.

*Id.* In rejecting this argument, the Court stated:

> Our prior case law indicates that the requirement of filing an affidavit of service of process is not a jurisdictional requirement where there are no allegations that the owners lacked notice of the foreclosure proceedings. *See Hauver v. Dorsey,* 228 Md. 499, 503-04, 180 A.2d 475, 478 (1962).
> The Scheves' contention has no merit. The defendants here have all been personally served with process and have submitted to the court's jurisdiction in these proceedings by filing motions for judgment. In addition, **the Scheves are not the proper party to raise issues concerning the notice provisions. The Legislature intended property owners, not tax sale purchasers, to be the beneficiaries of the tax sale notice provisions and enacted these provisions to provide greater due process protection for them.** *See St. George Church v. Aggarwal,* 326 Md. 90, 96, 603 A.2d 484, 487 (1992).

*Id.* at 375-76 (emphasis added).

As made crystal clear by the Court in *Shudder*, tax sale purchasers "are not the proper part[ies] to raise issues concerning the notice provisions." *Id.* Tax sale certificate holders retain all the right, title, and interest of the original purchasers. § 14-821. Thus, in the instant case, Appellants, as tax sale certificate holders, cannot assert allegedly defective service as justification for vacating the judgment foreclosing the rights to redeem. The circuit court, therefore, had authority to enforce the judgments against Kona and LienLogic.

24

In sharp contrast to *Shudder*, where there was a failure to file an affidavit certifying the method and time of service, here such affidavits were filed, and Appellants assert that their own affidavits incorrectly claimed that service was proper.[26]

Additional support for the propriety of the circuit court's orders against Kona and LienLogic derives from the undisputed fact that Appellees had actual notice of the respective actions. Appellee NBS filed an affidavit stating that NBS received service, and counsel proffered that Charles "Bud" Runkles would testify, as an officer of both NBS and WDB, that Appellees each received notice of the actions.

For these reasons, we hold that the circuit court did not err in disregarding Appellants' challenges to jurisdiction. *See Shudder*, 328 Md. at 375. Moreover, because Appellants cannot dispute the validity of the judgments on jurisdictional grounds, we also reject Appellants' arguments that Appellees lacked standing to file their motions to enforce judgment.

### III. Motions to Strike for Failure to Pay Taxes Accruing after Tax Sale

Appellants LienLogic and Kona assert that the circuit court abused its discretion in denying the motions to strike filed by Baltimore City and Montego Bay Properties, respectively.[27]

---

[26] The oddness of a party proclaiming the inaccuracy of its own affidavit for the purpose of bolstering an argument has not escaped this Court.

[27] We note that neither Baltimore City nor Montego Bay Properties have appealed the circuit court's rulings that denied their motions to strike, and they are not parties to this appeal.

Generally, a judgment foreclosing the right of redemption is conclusive after 30 days. Section 14-845(a) ("A court in the State may not reopen a judgment rendered in a tax sale foreclosure proceeding except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose."); *see also* Maryland Rule 2-535.

Section 14-847(d)(1), the statute invoked by Montego Bay Properties, provides:

> If the holder of the certificate of sale does not comply with the terms of the final judgment of the court within 90 days as to payments to the collector of the balance of the purchase price due on account of the purchase price of the property and of all taxes, interest, and penalties that accrue after the date of sale, that judgment may be stricken by the court on the motion of an interested party for good cause shown.

Consistent with the above statute, because the certificate holders failed to pay the surplus bid and the taxes that accrued after the tax sale, the court *could have* stricken the judgment that foreclosed the property owners' (Appellees') rights of redemption, for good cause shown. However, even though Baltimore City and Montego Bay respectively moved to strike the judgment, the court denied their motions. In reviewing the decision of the circuit court, "the only issue before the appellate court is whether the trial court erred as a matter of law or abused its discretion in denying the motion." *Canaj, Inc. v. Baker & Div. Phase III, LLC*, 391 Md. 374, 400-01 (2006) (quoting *In re Adoption/Guardianship No. 93321055/CAD,* 344 Md. 458, 475, *cert. denied sub nom. Clemy P. v. Montgomery County Dep't of Soc. Servs.,* 520 U.S. 1267 (1997)) (internal quotation marks omitted).

We first note that § 14-847(d)(1) vests discretionary power in the circuit court—the "judgment *may* be stricken by the court." (Emphasis added). Accordingly, the

determination of what constitutes "good cause" is also within the discretion of the court. A circuit court abuses its discretion when no reasonable person would take the view adopted by the court, "or when the court acts without reference to any guiding rules or principles." *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312 (1997) (quoting *North v. North,* 102 Md. App. 1, 13 (1994)) (internal citations, alterations, and quotations omitted).

In their respective motions, Baltimore City and Montego Bay Properties recited the predicates to judicial action pursuant to § 14-847(d)(1)—that the tax sale certificate holder had not complied "with the terms of the final judgment of the court within 90 days as to payments to the collector of the balance of the purchase price due on account of the purchase price of the property and of all taxes, interest, and penalties that accrue after the date of sale." However, the motions stopped there; they did not elucidate any other reason to strike the judgment. Appellee WDB opposed the motion to strike filed by Montego Bay Properties, arguing that Montego Bay Properties failed to show good cause—any reason to strike the judgment beyond the failure to pay taxes. WDB also asserted that Montego Bay Properties and Appellant Kona Properties are under common ownership and represented by the same counsel; thus, because of an extant conflict of interest, the motion to strike should not be granted. NBS did not file a response opposing Baltimore City's motion to strike; however, during the hearing, counsel for Baltimore City stated that the City is not concerned about whether the court enters an order directing a monetary judgment for the property owners.

In these circumstances, we cannot say that the circuit court abused its discretion in

27

not finding good cause to strike the judgments foreclosing the right of redemption. Neither Baltimore City nor Montego Bay Properties specified "good cause" to strike the judgments, i.e., they did not provide the court with evidence of anything more than the threshold requirement for striking the judgments—that the certificate holders had not made payment to the collector within 90 days.

### IV.    Motion to Strike by 2009 DRR-ETS, LLC

In the proceedings before the circuit court, Appellant DRR-ETS asked the court to strike, pursuant to Maryland Rule 2-311(c), S&S Properties' motion to enforce judgment because the motion allegedly did not reference the appropriate sections of the Maryland Code.[28]  On appeal, DRR-ETS now argues that the circuit court abused its discretion in denying the motion to strike.  Specifically, it contends that S&S Properties improperly cited to § 14-844(d),[29] which in turn refers to § 14-864.  DRR-ETS asserts that the citation was improper because § 14-864 allows government bodies—not private entities such as S&S Properties—to file a separate action to collect on taxes.

DRR-ETS's argument is meritless because S&S Partnership did not rely on § 14-844(d) as a section of the code that affords it relief in the form of a monetary judgment.

---

[28] Maryland Rule 2-311(c) states, "A written motion and a response to a motion shall state with particularity the grounds and the authorities in support of each ground."

[29] Section 14-844(d) provides that once a judgment is entered foreclosing the owner's right of redemption, the certificate holder "immediately becomes liable for the payment of all taxes due and payable after the judgment."  Further, on the entry of judgment, the holder "shall pay the collector any surplus bid and all taxes together with interest and penalties on the taxes due on the property."  It also allows a government entity to sue the holder in an action under § 14-864 to collect all taxes due and payable.

28

Instead, S&S Partnership referred to § 14-844(d) to establish the statutory basis for the proposition that Appellant has not satisfied its tax obligations to the City of Baltimore, "ETS, as the substitute plaintiff, has failed to pay to the City as collector its surplus bid amount of $29,722.18 as required by Tax [-] Property Art. § 14-844(d)."

S&S Properties relied on § 14-818,[30] which describes the procedure for transferring the taxes, interest, penalties, and the purchase price—also referred to as the bid—from the tax sale certificate holder to the collector, once the court has entered judgment foreclosing the property owner's right to redemption. The Court of Appeals has interpreted the precursors to §§ 14-818(a)(4)(i) and 14-844(d) as allowing a circuit

---

[30] § 14-818(a) provides, in part:

> (1)(i) The payment of the purchase price . . . shall be on the terms required by the collector. . . [T]he collector shall require the purchaser to pay, not later than the day after the sale, the full amount of taxes due on the property sold, . . . together with interest and penalties on the taxes, expenses incurred in making the sale . . . The residue of the purchase price remains on credit.

> * * *

> (3) On receiving the balance and after accrued taxes and interest and penalties on the taxes, the collector shall execute and deliver a proper deed to the purchaser.

> (4) Any balance over the amount required for the payment of taxes, interest, penalties, and costs of sale shall be paid by the collector to:

> > (i) the person entitled to the balance; or

> > (ii) when there is a dispute regarding payment of the balance, a court of competent jurisdiction pending a court order to determine the proper distribution of the balance.

court to enter a money judgment against certificate holders—requiring them to pay the surplus bids directly to the property owners or other interested parties. *See, e.g., Hardisty v. Kay, infra*, 268 Md. 202, 213 (1973) (interpreting Maryland Code (1957, 1969 Repl. Vol., 1972 Supp.), Article 81, § 81, the predecessor to § 14-818). Thus, S&S Properties, presented the applicable statutory provisions to the court, and the circuit court correctly referenced *Hardisty v. Kay*, 268 Md. 202 (1973), supporting its grant of the requested relief. We hold that the circuit court was well within its discretion to deny DRR-ETS's motion to strike.

### V.     *Hardisty v. Kay*

All three Appellants contend that the circuit court erred in relying on *Hardisty v. Kay* in entering judgments requiring them to pay the bid surpluses. Appellants first argue that *Hardisty* is no longer good law because changes in the Tax-Property Article have superseded the Court of Appeals' 1973 decision. Second, Appellants LienLogic and DRR-ETS argue that, with respect to Appellees NBS and S&S Partnership, the holding in *Hardisty* is limited in its application because the Court only had opportunity to resolve the rights of the owner of the property; thus, their argument goes, a mortgage holder, such as NBS or S&S, cannot obtain the bid surplus directly from Appellants. Appellees counter that the Tax-Property Article has not changed in any material aspect regarding provisions relied upon by the Court of Appeals in *Hardisty* and implicated in the instant cases, and, they maintain that nothing in *Hardisty* limits its holding to the property owners to the exclusion of other interested parties, such as mortgagees.

30

We review the circuit court's interpretation of the tax sale statute *de novo*. *See, e.g., Maryland-Nat'l Capital Park & Planning Comm'n v. Anderson*, 395 Md. 172, 181 (2006) (citing *Moore v. State*, 388 Md. 446, 452 (2005)); *Hardisty v. Kay*, 268 Md. 202, 210 (1973) (giving no deference to the circuit court's interpretation of the tax sale statute). "In construing a legislative enactment the fundamental judicial task is to determine and effectuate the legislature's intent, and indeed the very language of the statute serves as the primary source of the legislature's intent. To accomplish this task 'the words of the statute are to be given their ordinary and natural import.'" *Shudder*, 328 Md. at 371-72 (quoting *Revis v. Maryland Auto. Ins. Fund*, 322 Md. 683, 686 (1991)) (citations omitted).

## A. Continued Validity

In *Hardisty*, the Court of Appeals encountered facts similar to those in the three cases before us. Hardisty, a tax sale purchaser, obtained judgment foreclosing the rights of redemption of the property owners ("Kay"). The judgment "vested in (him) an absolute and indefeasible title in fee simple in the property." *Id.* at 206 (internal quotation marks omitted). "Hardisty balked at paying the balance owed," and "[w]hen more than eight months passed without [Hardisty] paying the balance required, [Kay] filed a petition in the foreclosure case to compel payment." Hardisty responded to the petition, contending that he was not required to pay the balance because payment "was merely a condition precedent to the issuance of the deed by the collector and that he 'ha[d] no wish to acquire said property and [did] not intend to obtain a deed thereto . . . and ha[d] elected to forfeit the amount of $1,139.87 paid on account of the purchase

price.'" *Id.* The circuit court entered judgment against Hardisty, requiring him to pay the balance of the bid.

The Court of Appeals affirmed the judgment of the circuit court and enounced three key holdings: (1) the entry of the judgment foreclosing the right to redemption "makes the [judgment] final in all respects and binding on the plaintiff as well as the defendant"; (2) the property owners were entitled to have the bidder compelled, "through the entry of a money judgment against [the bidder], to make the payments obviously contemplated by the [judgment] that vested title to this property in [the bidder]"; and (3) the money judgment does not create a double recovery for the property owners whereby the bidder would be required to pay both the property owners and the collector, because the collector "would have to recognize the payment of the judgment of record as satisfying the requirement of payment to the collector himself." *Id.* at 209-10, 212-13.

The Court of Appeals based its holdings, in part, on the stated purpose of the tax sale statute, communicated by the General Assembly through Article 81, § 97, which was "'to encourage the foreclosure of rights of redemption by suits in the equity courts and for the decreeing of marketable titles to property sold by the collector.'" *Hardisty*, 268 Md. at 208 (quoting Md. Code (1957, 1969 Repl. Vol., 1972 Supp.), Art. 81 § 97). The General Assembly has since recodified Art. 81 § 97 to TP § 14-832 and amended the original language to structure a balance between: "(1) the due process and redemption rights of persons that own or have an interest in property sold at a tax sale; and (2) the public policy of providing marketable title to property that is sold at a tax sale through the foreclosure of the right of redemption." § 14-832. The amended language adds

protections for property owners and other interested parties, changing the purpose of the tax sale statute, once concerned only with facilitating foreclosure, to a statute that respects the due process and redemption rights of owners on the one hand, and the interests of the State and certificate holders in an efficient foreclosure process on the other.

We hold that these changes to the tax sale statute do not alter the validity of the holding of *Hardisty*. In *Hardisty*, as in the cases currently on appeal, there were no allegations of due process violations, nor were there any allegations that the redemption rights of persons who own or have an interest in the properties were diminished. On the contrary, the property owners in *Hardisty*, as here, did not assert their right to redeem; instead, the owners *wanted* to divest themselves of the property. Thus, the balance that the legislature struck by amending section 14-832 does not disturb the rationale of the Court of Appeals in *Hardisty* and, furthermore, could only work in favor of Appellees— the title owners or mortgagees of the property—because the amended statutory language provides for consideration of the due process rights and redemption rights of persons that own or have an interest in the property sold in the tax, i.e., those in *Appellees'* positions.

The Court in *Hardisty* based its second holding—that the property owners were entitled to have the certificate holder compelled to pay the surplus bid—on the language of section 101 of Article 81, which conferred "'full equity jurisdiction to give full and complete relief under the provisions of this subtitle, in accordance with the general equity jurisdiction and practice of the said court.'" *Hardisty*, 268 Md. at 211 (quoting Article 81, § 101). In 1985, the General Assembly implemented a general recodification of the tax

sale statute and, as a result, Article 81, section 101 was recodified to section 14-834 of the Tax-Property Article. *See* 1985 Md. Laws, ch. 8, § 2, p. 552; 1986 Md. Laws, ch. 825, p. 3160-61. Section 14-834 states that the circuit court "has jurisdiction to give complete relief under this subtitle, in accordance with the general jurisdiction and practice of the court." The omission of the word "equity" from § 14-834 is of no import, as the Revisor's Note declares that, with the exception of the replacement of outmoded terminology, the only changes to the statute are in style.

These stylistic changes mirrored the merger of law and equity that occurred upon the adoption of Maryland Rule 2-301, effective July 1, 1984. Committee Note to Md. Rule 2-301 ("The effect of this Rule is to eliminate distinctions between law and equity for purposes of pleadings, parties, court sittings, and dockets."). Although the merger of law and equity makes possible the joinder "of claims previously cognizable only as separate actions" in a single action, "it does not avoid the occasional necessity of identifying the character and historical genesis of each claim for purposes of determining entitlement to a jury trial, the extent of jurisdiction, [and] the application of particular principles." *LaSalle Bank, N.A. v. Reeves*, 173 Md. App. 392, 405 (2007) (quoting 9 Maryland Law Encyclopedia, *Equity* § 5 (2000)). Thus, the equitable nature of tax sale proceedings has not been altered by the General Assembly or by the passage of time. And, more specifically, the explicit retention of a circuit court's ability to "give complete relief" compels the conclusion that the circuit court could fashion the relief it did here, just as it could during the time of *Hardisty*. *See* § 14-834; *Hardisty*, 268 Md. at 211.

Advancing to the crux of its analysis, the *Hardisty* Court analogized the position

34

of a tax sale certificate holder in a proceeding to foreclose the right of redemption to that

of a mortgagee, 268 Md. at 212, an analogy the Court of Appeals cited with approval as

recently as 1996, *see Magraw v. Dillow*, 341 Md. 492, 505 (1996). The older cases relied

upon by the *Hardisty* Court, such as *Armstrong Enterprises v. Citizens Building & Loan

Ass'n of Montgomery County*, 244 Md. 545 (1966), have not been overruled. In

discussing a motion to compel payment of a surplus, which remained after a foreclosure

sale based upon a mortgage, the Court of Appeals in *Armstrong Enterprises* stated:

> When an audit is finally confirmed the approved practice is to accompany
> the order (of final Ratification) with an order to pay the amounts allowed to
> the parties in interest; but the judgment of the court is as effectually
> pronounced without this order. After such an adjudication an order
> directing payment would at any time be passed as a matter of course. The
> order of final ratification is to be respected and obeyed without question by
> the party directed to disburse the fund. In the case of failure to do so, the
> remedy may be by petition by the injured party asking that payment be
> compelled; it is not necessary to file an original bill.[31]

244 Md. 545, 550-51 (1966) (quoting Edgar G. Miller, *Equity Procedure as Established

in the Courts of Maryland*, § 554, at 652-53 (1897) (footnotes omitted)). The same

procedure may be used to compel payment of the surplus from a tax foreclosure sale to

interested parties. *Hardisty*, 268 Md. at 212-13. Accordingly here, "the [A]ppellees

---

[31] In the contexts of mortgage foreclosures, Maryland Rule 14-216(a) currently
provides:

> **Distribution of Surplus.** At any time after a sale of property and
> before final ratification of the auditor's account, any person claiming an
> interest in the property or in the proceeds of the sale of the property may
> file an application for the payment of that person's claim from the surplus
> proceeds of the sale. The court shall order distribution of the surplus
> equitably among the claimants.

properly filed a [motion] to compel payment of the unpaid portion of the bid price and, as in a mortgage foreclosure case, the [circuit court] could grant appropriate relief to compel payment." *Id.* at 212 (citing *Armstrong*, 244 Md. at 550). Thus, Appellees were clearly entitled to petition the court to compel Appellants, through the entry of a judgment against them, to make the payments contemplated by §§ 14-831 and 14-844(d) to the collector.[32] *Id.* at 213.

## B. Section 14-847(d)(2)

Appellants contend that slight amendments to § 14-847(d) made in 1998 demonstrate a "complete and utter rebuke" of the *Hardisty* decision. Appellants' argument is unavailing.

The *Hardisty* Court interpreted Maryland Code (1957, 1969 Repl. Vol., 1972 Supp.), Article 81, § 115 as providing an elective remedy for property owners who may wish to strike a judgment foreclosing their right of redemption.[33] The appellant in *Hardisty* argued that Article 81, § 115, provided support for his argument that the circuit

---

[32] Indeed, the instant appeals were taken from the circuit court's order compelling payment to "the collector," i.e. the City of Baltimore. The court entered a revised order, discussed *supra*, from which no appeal was taken, compelling Appellants to pay the bid surpluses to Appellees. Based on our discussion of *Hardisty*, it is likely that that order would have been affirmed, had it been appealed.

[33] Article 81, § 115 stated:

> If the holder of the certificate of sale does not comply with the terms of the final decree of the court within ninety (90) days as to payments to the collector of the balance of the purchase price due on account of the purchase price of the property and of all taxes, interest, and penalties accruing subsequent to the date of sale, that decree may be stricken by the court upon the motion of an interested party for good cause shown.

court could not entertain a motion by the property owners to obtain a money judgment for the bid surplus—an interpretation with which the Court of Appeals resoundingly disagreed. *Hardisty*, 268 Md. at 211 ("We do not accept [Hardisty's] interpretation."). The Court acknowledged that Article 81, § 115 (now § 14-847(d)) provided an optional, but not exclusive, remedy to the property owners like the appellees in *Hardisty* and other interested parties.

Article 81, § 115 was amended and recodified to section 14-847(d) of the Tax-Property Article. As before, the recodified statute allows an interested party to strike a judgment foreclosing the right of redemption if the certificate holder does not pay the bid surplus and the taxes accruing after the tax sale to the collector within 90 days of the entry of judgment. § 14-847 (recodified by 1985 Md. Laws, ch. 8, § 2 and amended most recently by 2002 Md. Laws, ch. 466). Subsection (d)(2) clarifies that "[i]n Baltimore City, a certificate holder who has been enrolled as the owner of the property under subsection (a) of this section is not an interested party within the meaning of this subsection." § 14-847(d)(2).

Appellants assert that the General Assembly's addition of subsection (d)(2) must mean that a tax sale certificate holder, outside of Baltimore City, may be an interested party—contrary to the language in *Hardisty*, which stated that a certificate holder is not an interested party. *See Hardisty*, 268 Md. at 211. In other words, Appellants contend that the legislature carved out who is and who is not able to file a motion with the court to strike a judgment, thereby superseding the *Hardisty* Court's entire holding.

In *Hardisty*, the Court of Appeals stated:

> While we agree that the 'interested party' mentioned in the statute refers to the owner of the land at the time of the sale or anyone claiming rights through him, not including, however, the purchaser of the certificate, his heirs or assigns, that is as far as our agreement with appellant extends.

268 Md. at 211. It is the Court's statement, "not including, however, the purchaser of the certificate, his heirs or assigns," that Appellants assert was superseded by the legislature in adding subsection (d)(2). Thus, Appellants claim that, because the legislature stated that an enrolled certificate holder *is not* an interested party in Baltimore City, it stands to reason that an enrolled certificate holder *is* an interested party elsewhere throughout Maryland. This inference, Appellants' argument continues, calls into doubt the entire reasoning of the *Hardisty* Court.

Appellants' argument appears to rely on the interpretative canon *expressio unius est exclusio alterius,* under which the expression of one category implies the exclusion of others, "so that a court will draw the negative inference that no other items may be added." *Potomac Abatement, Inc. v. Sanchez*, 424 Md. 701, 712 (2012) (citing *Comptroller of the Treasury v. Blanton,* 390 Md. 528, 537 (2006) ("Maryland has long accepted the doctrine of *expressio (or inclusio) unius est exclusio alterius,* or the expression of one thing is the exclusion of another.")). However, the Court of Appeals has cautioned,

> not all statutory enumerations are limited by this canon. As we recently observed, "this particular canon of construction should be applied with extreme caution, as [it] is not a rule of law, but merely an auxiliary rule of statutory construction applied to assist in determining the intention of the Legislature where such intention is not manifest from the language used."

*Id.* at 712-13 (quoting *Breslin v. Powell,* 421 Md. 266, 294 (2011)). Following this

guidance from the Court of Appeals, we exercise caution and do not decide that Appellants' interpretation is correct.[34]

## C. Application of *Hardisty* to Mortgagees

LienLogic and DRR-ETS argue that even if *Hardisty* is still valid, its holding restricts the recipient of the requested relief to the property owner. Specifically, they contend that the circuit court cannot enforce a judgment to obtain the surplus on a bid when that relief is requested by a mortgagee or beneficiary of a deed of trust, as opposed to a property owner. However, the holding in *Hardisty* is not so limited.

Given the circumstances of *Hardisty*, where the property owners sued for the bid surplus, the Court did not have an opportunity to determine whether other interested parties could collect the surplus. 268 Md. at 206. Rather, the Court declared that the property owners, as parties in interest in the litigation, are "entitled to recover any excess over the amount necessary to satisfy taxes, interest, penalties and costs." *Id.* at 213. In holding that the excess may be transferred directly from the certificate holder to the property owners, the Court referenced Article 81, § 81, which was recodified by the General Assembly in 1985 to § 14-818 without material change. *See* Revisor's Note, 1985 Md. Laws, ch. 8, 539-40 (noting that changes were in style only). Section 14-818(a)(4) provides that any bid surplus "shall be paid by the collector to . . . the person

---

[34] Moreover, the Court in *Hardisty* did not rely on Article 81, § 115 for its holdings. *See* 268 Md. at 211 (discounting the appellant's argument and basing its decision on provisions other than Article 81, § 115). Thus, even if the General Assembly had significantly amended this provision, it would not have affected the validity of the holding of the Court of Appeals in *Hardisty*.

entitled to the balance; or . . . when there is a dispute regarding payment of the balance, a court of competent jurisdiction pending a court order to determine the proper distribution of the balance." Thus, the Court's decision in *Hardisty* applies generally to parties in interest, i.e., the defendants who have an interest in the property and who are entitled to the balance. *See Hardisty*, 268 Md. at 213.

Here, Appellees S&S Partnership and NBS were defendants in the instant proceedings foreclosing the rights of redemption. As interested parties entitled to the surpluses that would satisfy the property owners' respective obligations, they could request the circuit court to enter judgments against Appellants.[35]

LienLogic and DRR-ETS also argue that the judgment would not preclude the mortgagees from instituting foreclosure proceedings on the property in the future. Appellants assert that NBS and S&S Properties would reap a double reward—one reward from surpluses paid by Appellants and another reward from a potential future foreclosure of the properties. This assertion has no merit. One of the stated purposes of the tax sale statute is to allow clear title to pass to the tax sale certificate holder—this is the "public policy of providing marketable title to property that is sold at a tax sale through the foreclosure of the right of redemption." § 14-832(2). To effectuate this policy, the General Assembly has provided the circuit court with the authority to "give complete

---

[35] Section 14-836 recognizes mortgagees and beneficiaries of deeds of trust as interested parties. This section requires a plaintiff seeking to foreclose the right of redemption to name certain interested parties as defendants, including the record title holder, *any mortgagee of the property*, and the beneficiary under any deed of trust recorded against the property, for the judgment to be effective against them. *See PNC Bank, Nat. Ass'n v. Braddock Properties*, 215 Md. App. 315, 323-24 (2013).

relief" to extinguish "all liens and encumbrances on the property." § 14-834. Upon entry of judgment for the plaintiff foreclosing the right of redemption of the property owner and interested persons, "the judgment vests in the plaintiff an absolute and indefeasible title in fee simple in the property, free and clear of all alienations and descents of the property occurring before the date of the judgment and encumbrances on the property." § 14-844(b). Under Appellants' interpretation, a title would not be marketable if a mortgagee with notice of the tax foreclosure proceeding could later foreclose on the property after a final judgment in the tax sale proceeding has been rendered.

The circuit court's authority to extinguish all liens on the property reflects a broader principle in property law. As we stated in *PNC Bank, National Ass'n v. Braddock Properties*,

> [a]s long as a court has jurisdiction over the *res* in question—a question not at issue in this case—the court's exercise of jurisdiction in an *in rem* proceeding is binding upon a party with an asserted interest in the *res* when the party has received "notice reasonably calculated to apprise" it of the pending action. *Mennonite Bd. of Missions* [*v. Adams*], 462 U.S. [791,] 798, 103 S.Ct. 2706[, 2711 (1983)]. This constitutional principle is reflected in TP § 14-839(a)(5) ("Notice to a defendant may be made in any other manner that results in actual notice of the pendency of the action to the defendant.").

215 Md. App. at 328.

Thus, because Appellees had notice of the action foreclosing the right of redemption, they are bound by it and cannot foreclose on the properties. Stated differently, the circuit court's entry of judgment foreclosing the right to redemption extinguished the Appellees' ability to foreclose on the property as lien holders. Here, Appellees S&S Partnership and NBS were parties to the proceedings; they had notice,

41

and their rights were affected by the entries of final judgment. Accordingly, Appellants have no legitimate worry that the mortgagees could foreclose on the respective properties.

## VI.    Unjust Enrichment

All three Appellants assert that Appellees will be unjustly enriched if the circuit court judgments requiring Appellants to pay the bid surpluses stand. As articulated by DRR-ETS, "if the Appellee is successful in obtaining the Bid Balance then they can turn around and move to strike the judgment under Tax [-] Property Article 14-847(d)," and then sell or lease the property thereby obtaining a double recovery.

The Court in *Hardisty*, when confronted with a similar argument, held that the satisfaction of the judgment is binding on the defendants as well, and thus would not allow a double recovery. 268 Md. at 213. The Court stated:

> The collector . . . would have to recognize the payment of the judgment of record as satisfying the requirement of payment to the collector himself. Thus, upon proof of satisfaction of this judgment and payment of any subsequent taxes, interest, and penalties owed, the collector is required to execute a proper deed when one is presented by the certificate holder.

*Id.* Once Appellants pay the bid surpluses, the collector must acknowledge that payment as satisfying Appellants' obligations to the Appellees. Appellees would not be able to proceed as if payment had not been tendered, and the collector would similarly have to recognize the situation as such. Appellants' cries of unjust enrichment have no foundation.

## VII.   Public Policy Considerations

In their final argument, ironic only because *they* are making it, all three Appellants

argue that public policy dictates that the circuit court may not enter a monetary judgment against them because doing so would send a signal to property owners that it is acceptable (and could be profitable) to not pay property taxes. Appellants pose this argument as they, in appealing the judgments of the circuit court in these cases, attempt to avoid paying the taxes *they owe* on the properties for which they hold certificates.

In construing the tax sale statute, as in construing any legislative enactment, "the fundamental judicial task is to determine and effectuate the legislature's intent, and indeed the very language of the statute serves as the primary source of the legislature's intent. To accomplish this task the words of the statute are to be given their ordinary and natural import." *Shudder, supra*, 328 Md. at 371-72 (internal citations omitted). We note that "the tax sale statute outline[s] 'a *complete, clear, and logical procedure* for foreclosing [the right of redemption].'" *Id.* at 373 (emphasis and alteration in original) (quoting *Simms*, 298 Md. at 8).

The legislature has created a rational scheme that allows local jurisdictions to obtain revenue that they might otherwise not receive. Indeed, the consequences of this statutory scheme *necessitate* that another party—the tax sale purchaser—pays the delinquent taxes owed by the property owner when the purchaser bids on the property. *See* § 14-818(a)(1)(i) ("[T]he collector shall require the purchaser to pay, not later than the day after the sale, the full amount of taxes due on the property sold . . . together with interest and penalties[, and] expenses . . . ."). The tax sale statute further provides that any balance left over from the purchase price, remits to the person entitled to the balance—in the instant case, the property owner or mortgage holder. § 14-818(a)(4)(i).

The General Assembly created these procedures to direct the transfer of tax revenue to the local jurisdiction, the transfer of title to the tax sale purchaser, and the transfer of any sum that remains to the person entitled to it. Policy is the providence of the General Assembly; similarly, it is the legislature's prerogative to create the incentives contained in the tax sale provisions. We do not pass judgment on the tax sale policies.

In conclusion, we hold that absent contrary indications from the Court of Appeals or the General Assembly, *Hardisty v. Kay* remains good law and provides the vehicle to transfer the bid surplus directly from the tax sale certificate holder to the property owner or mortgagee. We observe that neither set of parties paid the taxes due on the properties—not before the tax sale, with regard to Appellees and not after the tax sale, with regard to Appellants. As made apparent by the facts of these cases, Baltimore City has been subject to a cycle of tax delinquency, whereby the tax sale purchaser or certificate holder *fails to pay its own property taxes* after foreclosing the title owner's right of redemption. This could not have been the intent of the legislature in crafting the provisions of the tax sale statute.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**